DONALD D. WISCH, APPELLANT, v. HOLLY JENSEN, DIRECTOR OF THE DEPARTMENT OF MOTOR VEHICLES, STATE OF NEBRASKA, APPELLEE.

379 N.W.2d 755

Filed January 17, 1986.   No. 84-626.

Barbara Thielen of Taylor, Fabian, Thielen & Thielen, for appellant.

A. Eugene Crump, Deputy Attorney General, and Michele M. Wheeler, Special Assistant Attorney General, for appellee.

KRIVOSHA, C.J., and CAPORALE, J., and BLUE and OLBERDING, D. JJ., and COLWELL, D.J., Retired.

OLBERDING, D.J.

This is an appeal from the judgment of the district court for Douglas County affirming an order of the director of the Department of Motor Vehicles revoking the driver's license and operating privileges of Donald D. Wisch for a period of 1 year pursuant to the implied consent law of this state.

On August 13, 1983, Wisch was driving in the city of Omaha. While attempting to change lanes, he collided with another vehicle. At approximately 6:30 p.m. Officer Stephen A. Sanchelli of the Omaha Police Department responded to the scene. The officer described Wisch's behavior during the initial investigation as follows: "He was abusive and used profanity and I informed him at that time that if he continued I would place him under arrest for disorderly conduct." After observing Wisch had red, bloodshot, and glazed eyes and thick-tongued speech, and after smelling a strong odor of alcohol, the officer advised him he was taking him to the police station to take a breath test. At the station, the officer testified, he read an implied consent advisement postarrest form to Wisch verbatim and the section in regard to the consequences of a refusal twice. Appellant refused to sign the form. The officer further testified

at trial that he requested Wisch to submit to the breath test in the presence of another officer, and he refused. The officer asked Wisch a second time to take the "breath test," and Wisch again refused. The officer then dismissed the technician, and as she was at the door to leave the room Wisch stated that he changed his mind and would take the test. The officer informed him that it was too late. The officer testified that it was after the refusals that he then read Wisch his rights per *Miranda* in accordance with standard Omaha Police Department procedure. In his report the officer also checked the following boxes: (1) Alcoholic odor: strong; (2) Attitude: profanity, cocky, uncooperative; (3) Speech: thick-tongued, slurred; (4) Balance: needs support, unsure; (5) Walking: swaying, unsure.

Wisch's version of the facts differs from the officer's. He testified that he is a schoolteacher with 24 years' experience teaching science, that on the day of the occurrence he had been at the races at Ak-Sar-Ben from approximately 3 to 6 p.m., and that he consumed two small glasses of beer from about 4 to 5:30 p.m. He stated he tried to explain that the other driver was not telling it quite the way it happened, and the officer replied, "You shut up or I am going to arrest you for something." He further testified that the officer had read the *Miranda* warnings together with the implied consent advisement postarrest form, which confused him, and that when the officer asked if he would take the test, he thought he was talking about the *Miranda* rights and said, "No, I won't." Immediately upon realizing his mistake, he said he would take the test, but the officer replied, "I only ask you once." The time between the request of the officer and his agreement to take the test was not over 30 seconds, and the technician was still present. The reason Wisch gave for not signing the form was that he had left his glasses in his automobile and he could not read without them.

While Wisch raises eight assignments of error in his brief, they may be consolidated as follows: (1) The officer did not have reasonable grounds to believe that he was driving or was in the actual physical control of a motor vehicle upon a public highway in this state while under the influence of alcoholic liquor; and (2) His refusal was followed by a willingness to take the test, and therefore does not constitute a "refusal."

On appeal from an order of revocation of a motor vehicle operator's license under the implied consent law, our review is de novo as in equity. *Wiseman v. Sullivan*, 190 Neb. 724, 211 N.W.2d 906 (1973). However, in determining the weight of the evidence, we will consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. *State v. Jones*, 202 Neb. 488, 275 N.W.2d 851 (1979).

The establishment of reasonable grounds for arrest and arrest are conditions precedent to a valid request to submit to a chemical test. Neb. Rev. Stat. § 39-669.08(2) (Reissue 1984); *Mackey v. Director of Department of Motor Vehicles*, 194 Neb. 707, 235 N.W.2d 394 (1975). The evidence, as testified to by the officer and not materially disputed, shows that the officer observed Wisch (1) return to the scene of the accident in his automobile, (2) be abusive and use profanity, (3) first deny fault and then admit he was the cause of the property damage accident, (4) to have a strong odor of alcohol on his breath, (5) to have red, bloodshot, and glazed eyes, and (6) to have slurred and thick-tongued speech.

Based upon these observations and his 6 years' experience with the department, the officer testified at trial that in his opinion Wisch was operating a motor vehicle while under the influence of alcohol. In *State v. Jablonski*, 199 Neb. 341, 258 N.W.2d 918 (1977), *overruled on other grounds*, *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980), we held that where the arresting officer testified that defendant appeared to be intoxicated, that he was unsteady when he walked, that there was a strong odor of alcohol on his breath, and that his speech was slurred, such evidence was sufficient to support a conviction for operating a motor vehicle while under the influence of alcohol. The evidence before us is clearly sufficient to meet the lesser standard of "reasonable grounds."

Wisch next argues that he did not know he was being asked to submit to a chemical test because he was confused by the commingling of the *Miranda* warnings in connection with the reading of the implied consent advisement postarrest form. The only evidence offered by Wisch in this regard is his own uncorroborated testimony.

Wisch would have us believe that even though he has survived 24 years as a schoolteacher, he became confused when the arresting officer read a one-page form, which *does not* contain any *Miranda* warnings. He does not dispute that the officer read something, nor does he dispute that he refused to sign the form, which was signed by the arresting officer and witnessed by another officer.

Officer Sanchelli testified that he advised Wisch at the scene of the accident he was being taken to the police department for a "breath test" and that, upon arrival at the station, he read the implied consent form to plaintiff, verbatim. It was not until after he read the implied consent form to Wisch twice, asked Wisch to submit to the test twice, and Wisch refused to take the test, that he read him his *Miranda* rights. We simply find the officer's testimony more plausible.

As we have stated previously, to constitute a refusal to submit to a chemical test required under the implied consent law, the only understanding required by the licensee is an understanding that he has been asked to take a test. *Winter v. Peterson*, 208 Neb. 785, 305 N.W.2d 803 (1981). From a review of the evidence it is clear that Wisch knew he was going to be asked to take a test, that he was asked twice to take the test, and that he specifically refused twice to take the test. Wisch further argues that after no more than 30 seconds he realized his misunderstanding with the *Miranda* rights, and he agreed to take the test. In *Hoyle v. Peterson*, 216 Neb. 253, 343 N.W.2d 730 (1984), we held that a motorist's subsequent offer to take the blood alcohol test previously refused does not nullify or cure such driver's initial refusal to take the test requested by the arresting officer. At the time Wisch changed his mind, the technician had already been excused and was at the door leaving the room. This was beyond the point of no return.

The judgment of the district court is affirmed.

AFFIRMED.