770 P.2d 817

**In the Matter of the Suspension of the Driver's License of Glenn SMITH.**

**Glenn SMITH, Petitioner–Appellant,**

v.

**The STATE of Idaho, Respondent.**

**No. 16979.**

Court of Appeals of Idaho.

March 8, 1989.

Richard G. Smith (argued), Kevin J. Beaton and John Thomas Hawley, Jr., Hawley, Troxell, Ennis & Hawley, Boise, for petitioner-appellant.

Jim Jones, Atty. Gen. by Myrna A.I. Stahman (argued), and David R. Minert, Deputy Attys. Gen., Boise, for respondent.

BURNETT, Judge.

■ Idaho Code § 18–8002(4) provides that if a motorist "refuses" to take a blood-alcohol test after he has been arrested for driving under the influence, his operator's license shall be suspended. Today we are asked to decide whether the test has been "refuse[d]" if the motorist initially declines the test but shortly thereafter agrees to take it. As explained in more detail below, we hold that there is no refusal if the assent is still timely and is given unequivocally.

The facts framing the issue are undisputed. On January 19, 1987, at about 10:15 a.m., a car driven by Glenn Smith ran off a highway in rural Cassia County. It came to rest after rolling one and one-half times. Smith, the sole occupant of the car, escaped serious injury. At approximately 11:45 a.m., an officer at the scene placed Smith under arrest for driving under the influence in violation of I.C. § 18–8004. Although the record shows no eventual conviction on that charge, we assume for the sake of this discussion that the arrest was valid.

The officer then transported Smith to the Cassia County Law Enforcement Building in Burley. At about 2:15 p.m.—four hours after the accident—the officer requested Smith to take a blood-alcohol test. Smith initially declined. Some ten to twenty minutes later, having telephoned an attorney, Smith told the officer he would take the test and he requested an opportunity to do so. The officer, who had filled out a one-page "affidavit of refusal" form, told Smith it was "too late." (The officer later testified that there was "no real reason why" he could not have administered the test at Smith's request.) Smith remained in custody at the Law Enforcement Center until 5:00 p.m., when all administrative details relating to his arrest were completed. He then went to a nearby hospital and submitted to a blood-alcohol test at his own expense. The blood sample, drawn at approximately 5:20 p.m., showed an alcohol content of .04%.

The arresting officer forwarded Smith's operating license to the magistrate division of the district court, pursuant to I.C. § 18–8002(4)(a). At an evidentiary hearing, Smith argued that his statements to the officer, taken in their entirety, showed that he had not truly "refused" the test. However, the magistrate deemed Smith's initial declination of the test to be legally controlling. He suspended Smith's license, staying the suspension during an appeal. The district court affirmed. Smith appealed again, bringing the issue to us.

I

The concept of refusal, as embodied in I.C. § 18–8002, has factual and legal dimensions. When a question of refusal turns upon a determination of the motorist's words or expressive acts, the issue is one of fact. *E.g., State v. Curtis*, 106 Idaho 483, 489–90, 680 P.2d 1383, 1389–90 (Ct. App.1984). However, when the question turns not upon whether certain things were said or done, but upon whether such words or acts are of legal significance, then the issue is one of law.

Thus, the courts have ruled, as a matter of law, that if a motorist simply feigns consent and fails to take a blood-alcohol test, his behavior is deemed to be a refusal. *E.g., State v. Clark*, 229 Neb. 103, 425 N.W.2d 347 (1988). Similarly, if a motorist engages in delaying tactics to avoid deciding whether to refuse or to take the test, his acts are deemed to constitute a refusal. *E.g., Marmo v. Commonwealth Department of Transportation*, —— Pa.Cmwlth. ——, 543 A.2d 236 (1988). Conversely, a motorist's unwillingness to take a test involving direct extraction of blood has been held not to constitute a refusal if the motorist has a genuine fear of needles and his fear is timely communicated to the officer requesting the test. *Matter of Griffiths*,

113 Idaho 364, 744 P.2d 92 (1987). Finally, a motorist who declines to take the test, erroneously asserting a right to consult an attorney before doing so, is deemed to have refused the test. *State v. Ankney*, 109 Idaho 1, 704 P.2d 333 (1985); *Mills v. Bridges*, 93 Idaho 679, 471 P.2d 66 (1970) (applying I.C. § 49–352, a predecessor of I.C. § 18–8002). *Compare, e.g., Morgan v. Motor Vehicles Division*, 85 Or.App. 267, 736 P.2d 580 (1987) (upholding right to consult counsel based on state constitution); *Stone v. McCullion*, 27 Ohio App.3d 112, 500 N.E.2d 326 (1985) (upholding right to consult counsel based on state statute).

These cases demonstrate how the concept of refusal has been shaped by rulings on the legal significance of certain responses by motorists when asked to take blood-alcohol tests. The instant case presents a similar question. It requires us to determine the legal effect of an initial expression of unwillingness to take a test, followed shortly thereafter by a statement of desire to do so. The issue is one of first impression in Idaho. Because it is also a question of law, we exercise free review over the decisions of the magistrate and the district judge. Moreover, because the district judge sat in an appellate capacity, we will conduct our review independently from, albeit with due regard for, his decision. *Hentges v. Hentges*, 115 Idaho 192, 765 P.2d 1094 (Ct.App.1988).

## II

The issue before us is not to be confused with the right-to-counsel issue decided by our Supreme Court in the *Ankney* and *Mills* cases cited above. In neither of those cases, so far as the Court's opinions show, did the motorist ever express a desire to take the test. Consequently, the Supreme Court had no occasion to decide whether an assent, given shortly after an initial declination, could have been considered in determining whether a refusal had occurred.[1] In this case, as we have noted, the motorist gave his assent after talking to an attorney. But the conversation with the attorney did not invoke *Ankney* and *Mills*, nor did it alter the issue before us here. The issue would be the same if the motorist had given his assent after talking only to the police officer, to a friend, or to no one at all.

## A

The courts in our sister states are deeply divided on whether an assent after an initial declination is of any legal import in determining whether a refusal has occurred. In some states, the issue has been resolved by specific statutory language. *See, e.g., Mathis v. Division of Motor Vehicles*, 71 N.C.App. 413, 322 S.E.2d 436 (1984) (applying statute that allows thirty minutes for motorist to make final decision); *Conrad v. Schwendiman*, 680 P.2d 736 (Utah 1984) (applying statute that requires a motorist to take the test "immediately" upon request). Cases from those jurisdictions are of no instructive value here.[2]

1. Idaho Code § 18–8002, quoted at footnote 2 *infra*, establishes an implied consent. Consequently, the officer may direct the test to be taken, as provided in the statute, subject to license suspension for noncompliance. However, if the motorist initially declines, then the question of a subsequent assent becomes relevant in determining whether there has been a true refusal. In this context, we use the word "assent" simply to denote the absence, or abrogation, of a refusal.

2. Unlike the statutes in some states, I.C. § 18–8002 contains no definition of a refusal, nor any guidance as to the time allowed for a motorist to act upon the officer's request to take a test. Our statute simply provides, in pertinent part as follows:

(1) Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances. . . .
(2) Such person shall not have the right to consult with an attorney before submitting to an evidentiary test. . . .
(3) At the time an evidentiary test . . . is requested, the person shall be informed that if he refuses to take the test:
(a) His license will be seized by the police officer and a temporary permit will be issued . . . ;
(b) He has the right to request a hearing within seven (7) days to show cause why he refused to take the test;

Among the states where the issue has been addressed by case law rather than by statute, we find two competing schools of thought. One school teaches that the motorist's initial expression of unwillingness is a "refusal," complete unto itself, and that such a "refusal" cannot be recanted by any subsequent assent. *Webb v. Miller*, 187 Cal.App.3d 619, 232 Cal.Rptr. 50 (1986); *Wisch v. Jensen*, 221 Neb. 609, 379 N.W.2d 755 (1986); *State v. Corrado*, 184 N.J.Super. 561, 446 A.2d 1229 (App.Div.1982). *Cf. Harlan v. State*, 113 N.H. 194, 308 A.2d 856, 858 (1973) (holding that a test need not be administered "once a substantial time has elapsed from the initial refusal"). These cases rely heavily upon a perceived need for a "bright line" rule relieving police officers of any responsibility to wait for motorists to change their minds about an initial "refusal." The rigid application of such a "bright line" rule is starkly illustrated in *Wisch v. Jensen, supra*, where the Nebraska Supreme Court said that a motorist who changed his mind within fifteen seconds had already gone "beyond the point of no return." 379 N.W.2d at 758.

The second, more flexible school of thought embraces two complementary approaches. One approach is to hold that even if a motorist's initial unwillingness constitutes a "refusal," the refusal can be timely cured. *E.g., Gaunt v. Motor Vehicle Division*, 136 Ariz. 424, 666 P.2d 524 (App.1983); *Zahtila v. Motor Vehicle Division*, 39 Colo.App. 8, 560 P.2d 847 (1977); *Larmer v. State*, 522 So.2d 941 (Fla.Dist. Ct.App.1988); *Lund v. Hjelle*, 224 N.W.2d 552 (N.D.1974). The other approach is to examine the motorist's expressions *in toto*,

holding that an initial declination followed by a timely assent does not constitute a "refusal" at all. *E.g., State v. Moore*, 62 Haw. 301, 614 P.2d 931 (1980); *People v. Naseef*, 127 Ill.App.3d 70, 82 Ill.Dec. 204, 468 N.E.2d 466 (1984). Common to both of these approaches is the recognition of a delayed but nevertheless timely assent. Timeliness is analyzed in varying language, but the courts appear to agree in substance on three requirements. (a) The assent must be given while the motorist is still in police custody. (b) It must be given at a time when the police would not be unduly inconvenienced—for example, when the officer who would administer the test has become unavailable. (c) The assent must be given before the delay would materially affect the outcome of the test.

This flexible rule rests upon pragmatic and policy grounds. Pragmatically, it recognizes that although blood-alcohol levels vary over time, they do not change so rapidly that a short delay necessarily would invalidate a test result. *See generally State v. Turner*, 94 Idaho 548, 550, 494 P.2d 146, 148 (1972) (noting expert testimony that blood-alcohol levels generally rise during the first forty-five to sixty minutes after consumption, and then decrease at the rate of .01% to .02% per hour).[3]

The policy rationale is twofold. First, the flexible rule strives to avoid the apparent unfairness of giving conclusive legal effect to a retracted portion of the motorist's response to a request for a blood-alcohol test. As the Hawaii Supreme Court said in *State v. Moore, supra*:

We ... decline to hold with a rule of law which would rigidly and unreasonably

(c) If he does not request a hearing or does not prevail at the hearing, his license will be suspended absolutely for one hundred eighty (180) days [120 days under the version of statute applicable to this case]; and

(d) After submitting to the test he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

(4) If the motorist refuses to take the evidentiary test after the information has been given in accordance with subsection (3) above:

(a) His license or permit shall be seized by the police officer and forwarded to the court ...;

(b) A written request may be made within seven (7) calendar days for a hearing before the court.... The hearing shall be limited to the question of why the defendant did not take the test, and the burden of proof shall be upon the defendant....

3. At one time, the Idaho Department of Law Enforcement had a regulation explicitly allowing the motorist to change his mind within one hour after declining a test. *See Mills v. Bridges*, 93 Idaho at 682 n. 2, 471 P.2d at 69 n. 2. This regulation was no longer in effect when the present case arose.

bind an arrested person to his first words spoken, no matter how quickly and under what circumstances those words are withdrawn. We consider the better rule to be one which takes into consideration the fairness to all parties of permitting an arrested person later to change his mind.

614 P.2d at 935. *See also* 4 R. ERWIN, DEFENSE OF DRUNK DRIVING CASES § 33.06[4], at p. 33–71 (3d ed. 1989) (characterizing the flexible rule as "more logical and fair").

The second policy foundation of the flexible rule derives from the purpose of statutes like I.C. § 18–8002(4), which establish "implied consent" to blood-alcohol tests and prescribe administrative penalties, such as license suspension, for refusing the tests. This purpose, as we observed in *State v. Breed*, 111 Idaho 497, 501, 725 P.2d 202, 206 (Ct.App.1986), "is to provide an incentive for motorists to cooperate in determining levels of blood-alcohol content by a reasonably precise scientific method." This purpose is better served by interpreting the statute to allow a timely, albeit delayed, assent to a blood-alcohol test than by construing it to give conclusive effect to the motorist's initial declination. The Arizona court in *Gaunt v. Motor Vehicle Division, supra,* has stated the point well:

It is not hard to imagine circumstances where the defendant, soon after declining to take the breath test, has second thoughts. If the test results would remain valid, and if no material inconvenience is caused to the police, we fail to see the harm in permitting the defendant to subsequently consent to take the test. The breath test results could be an essential part of the state's case against the arrested motorist (or part of the motorist's defense). By approving a flexible rule we believe that this important evidence will be more frequently available and therefore the prophylactic purpose of the implied consent law will be achieved.

666 P.2d at 527.

The importance of this "prophylactic purpose," as the Arizona court called it, was underscored by the United States Supreme Court in its decision upholding the constitutionality of implied consent laws. The Supreme Court said: "[T]he State wants [the motorist] to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test." *South Dakota v. Neville,* 459 U.S. 553, 564, 103 S.Ct. 916, 922, 74 L.Ed.2d 748 (1983).

**B**

■ The choice between these two schools of thought is not an easy one. The state, particularly at oral argument, has made a strong presentation in favor of the "bright line" rule. If our choice turned simply upon balancing the asserted benefits of simplicity and convenience under the "bright line" rule against the individualized fairness sought to be achieved by the flexible rule, we would find the outcome very problematic indeed. But when we consider the additional policy rationale for the flexible rule—that it better serves the public interest in obtaining scientific information about the blood-alcohol levels of motorists accused of driving under the influence, we believe the issue must be resolved in favor of the flexible rule. Accordingly, we hold that if a motorist, having initially declined to take a test, reconsiders and gives a timely and unequivocal assent, he cannot be deemed to have "refused" the test under I.C. § 18–8002(4). Such a delayed assent will be deemed timely only if it is given while the motorist is still in police custody; it is given when testing equipment and personnel are readily available; and the delay produced by the initial declination would not cause the outcome of the test to be materially affected. Consistent with subsection (4)(b) of I.C. § 18–8002, quoted at footnote 2 *supra,* the burden rests upon the motorist to prove by a preponderance of the evidence that these requirements have been satisfied.

Each requirement poses a question of fact. All of them, however, are answered in the present case by the undisputed facts recited earlier in this opinion. Smith gave

his assent while he was still in custody. Testing equipment and personnel were readily available at the Cassia County Law Enforcement Building. Finally, the delay of ten or twenty minutes, produced by Smith's initial declination, was plainly insufficient to affect the test result materially. On the latter point we note that the timeliness of the delayed assent is measured by the interval between the initial declination and the assent, not by the longer period commencing at the time of arrest or the time of the accident.

We conclude that the magistrate erred in determining that a refusal had occurred and in suspending Smith's license. The decision of the district court, upholding the magistrate's order, is reversed. The case is remanded to the district court with instruction to remand it further to the magistrate division, where the license suspension order shall be rescinded.

Costs to appellant. No attorney fees awarded on appeal.

WALTERS, C.J., concurs.

SWANSTROM, J., concurs in the result.