572 So.2d 1098 (1990)
William R. PICKARD
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY, LICENSE CONTROL AND DRIVER IMPROVEMENT DIVISION.
No. CA 89 1717.
Court of Appeal of Louisiana, First Circuit.
December 18, 1990.
John P. Calmes, Jr., Baton Rouge, for plaintiff-appellant William R. Pickard.
Wayne R. Crouch, Staff Atty., Baton Rouge, for defendant-appellee Department of Public Safety and Corrections.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
This is an appeal from a district court judgment sustaining the suspension of appellant's driver license by the Department of Public Safety (DPS), pursuant to La.R.S. 32:661 et seq. due to appellant's alleged refusal to submit to a breath alcohol test.
On December 17, 1988, appellant, William R. Pickard, was detained by Louisiana State Trooper John Futral on suspicion of operating a motor vehicle while under the influence of alcohol. After performing several field sobriety tests, appellant was *1099 placed under arrest and transported to Troop A headquarters, where he was advised of his rights, including the consequences of refusing to submit to a breath alcohol test. Appellant initially agreed to take such a test, but then requested that he be allowed to contact his attorney. After being permitted to do so, appellant then declined, upon the advice of his attorney, to take the breath test.
Trooper Futral testified that when an arrestee refused to submit to the test the procedure followed was to set up the intoxilyzer machine and allow it to run through its three-minute cycle, during which a breath sample normally would be produced. If no breath sample was given during this time, the machine then cleared itself and produced a print-out indicating an invalid/deficient sample. He stated that in the instant case, as he was waiting for the printout to come out of the machine after appellant had refused to take the test, another officer walked into the room and commented on the lengthy suspension appellant would incur due to having refused a breath alcohol test on a prior occasion. Appellant immediately became upset and told Futral several times that he wanted to take the test. However, Trooper Futral declined to administer a test to appellant, explaining that he had informed appellant while they were waiting for the machine to go through its cycle that if appellant refused that test no other test would be offered.
On March 16, 1989, DPS suspended appellant's driving privileges for a period of five hundred and forty-five (545) days[1]. Appellant then filed a petition for review of this suspension in district court, as provided in La.R.S. 32:668C. After a hearing, the district court rendered judgment upholding the suspension. Appellant now appeals this judgment, contending he should not be penalized for refusing to take a breath alcohol test when he reconsidered and consented to take the test within minutes after his original refusal to submit to it.
Our review of the jurisprudence indicates the issue presented herein is res nova in Louisiana: i.e. whether a person, having once refused to take a breath alcohol test after being fully advised of the consequences of doing so, has a right to be administered a test upon thereafter reconsidering and requesting he be given the test. We do not agree with the position taken in appellant's brief that State v. Shuff, 459 So.2d 78 (La.App. 2d Cir.1984), is dispositive of this issue. Although Shuff would seem to support appellant's position since the Court made the statement therein that "we find no basis in the jurisprudence for the assertion that one's refusal to take a [breath alcohol] test is irrevocable", the Court in Shuff was faced with a different issue than the one presented in the instant case. 459 So.2d at 82. In Shuff the Court dealt only with the issue of whether the results of a breath alcohol test given upon the defendant's request following his initial refusal to take it were admissible in a criminal trial, and not the issue of whether the defendant would have had a right to require that a test be given if the police had refused his request to administer one because of his earlier refusal.
While the latter issue is res nova in Louisiana, we have found extensive jurisprudence on this issue in other states. These decisions have generally adopted one of two approaches: 1) an absolute rule that once a person has refused to submit to a chemical test for intoxication he cannot recant or cure that refusal under any circumstances or 2) a flexible rule requiring that the total circumstances be examined on a case-by-case basis to determine whether a person should be allowed to withdraw his prior refusal to submit to a chemical test. In Smith v. State of Idaho, 115 Idaho 808, 770 P.2d 817, 820-821 (Idaho App.1989), the Court fully discussed these two opposing approaches and the rationales therefor as follows:

*1100 Among the states where the issue has been addressed by case law rather than by statute, we find two competing schools of thought. One school teaches that the motorist's initial expression of unwillingness is a "refusal," complete unto itself, and that such a "refusal" cannot be recanted by any subsequent assent.... These cases rely heavily upon a perceived need for a "bright line" rule relieving police officers of any responsibility to wait for motorists to change their minds about an initial "refusal." The rigid application of such a "bright line" rule is starkly illustrated in Wisch v. Jensen, supra, [221 Neb. 609, 379 N.W.2d 755 (1986)] where the Nebraska Supreme Court said that a motorist who changed his mind within fifteen seconds had already gone "beyond the point of no return." 379 N.W.2d at 758.
The second, more flexible school of thought embraces two complementary approaches. One approach is to hold that even if a motorist's initial unwillingness constitutes a "refusal," the refusal can be timely cured. The other approach is to examine the motorist's expressions in toto, holding that an initial declination followed by a timely assent does not constitute a "refusal" at all.... Common to both of these approaches is the recognition of a delayed but nevertheless timely assent. Timeliness is analyzed in varying language, but the courts appear to agree in substance on three requirements. (a) The assent must be given while the motorist is still in police custody. (b) It must be given at a time when the police would not be unduly inconvenienced for example, when the officer who would administer the test has become unavailable. (c) The assent must be given before the delay would materially affect the outcome of the test.
This flexible rule rests upon pragmatic and policy grounds. Pragmatically, it recognizes that although blood-alcohol levels vary over time, they do not change so rapidly that a short delay necessarily would invalidate a test result. See generally State v. Turner, 94 Idaho 548, 550, 494 P.2d 146, 148 (1972) (noting expert testimony that blood-alcohol levels generally rise during the first forty-five to sixty minutes after consumption, and then decrease at the rate of .01% to .02% per hour).
The policy rationale is twofold. First, the flexible rule strives to avoid the apparent unfairness of giving conclusive legal effect to a retracted portion of the motorist's response to a request for a blood-alcohol test. As the Hawaii Supreme Court said in State v. Moore, supra [62 Haw. 301, 614 P.2d 931 (1980) ]:
We ... decline to hold with a rule of law which would rigidly and unreasonably bind an arrested person to his first words spoken, no matter how quickly and under what circumstances those words are withdrawn. We consider the better rule to be one which takes into consideration the fairness to all parties of permitting an arrested person later to change his mind.
614 P.2d at 935
The second policy foundation of the flexible rule derives from the purpose of statutes like I.C. s 18-8002(4), which establish "implied consent" to blood-alcohol tests and prescribe administrative penalties, such as license suspension, for refusing the tests. This purpose, as we observed in State v. Breed, 111 Idaho 497, 501, 725 P.2d 202, 206 (Ct.App.1986), "is to provide an incentive for motorists to cooperate in determining levels of blood-alcohol content by a reasonably precise scientific method." This purpose is better served by interpreting the statute to allow a timely, albeit delayed, assent to a blood-alcohol test than by construing it to give conclusive effect to the motorist's initial declination....
....
The choice between these two schools of thought is not an easy one....If our choice turned simply upon balancing the asserted benefits of simplicity and convenience under the "bright line" rule against the individualized fairness sought to be achieved by the flexible rule, we would find the outcome very problematic indeed. But when we consider the additional policy rationale for *1101 the flexible rulethat it better serves the public interest in obtaining scientific information about the blood-alcohol levels of motorists accused of driving under the influence, we believe the issue must be resolved in favor of the flexible rule. Accordingly, we hold that if a motorist, having initially declined to take a test, reconsiders and gives a timely and unequivocal assent, he cannot be deemed to have "refused" the test....Such a delayed assent will be deemed timely only if it is given while the motorist is still in police custody; it is given when testing equipment and personnel are readily available; and the delay produced by the initial declination would not cause the outcome of the test to be materially affected.... [T]he burden rests upon the motorist to prove by a preponderance of the evidence that these requirements have been satisfied. (Citations and footnotes omitted)
We find the rationale supporting the so-called "flexible rule" persuasive, believing it better serves both the interests of fairness and the public good for the above-delineated reasons. Accord Larmer v. Dept. of Highway Safety, 522 So.2d 941 (Fla.App. 4 Dist.) review denied, 531 So.2d 1352 (1988); Gaunt v. Motor Vehicle Div., Dept. of Transp., 136 Ariz. 424, 666 P.2d 524 (App.1983); State v. Moore, 62 Haw. 301, 614 P.2d 931 (1980).
Accordingly, we hold that a flexible rule should be applied in determining whether a "refusal" within the meaning of La.R.S. 32:661 et seq. has occurred when a person evinces a desire to recant his prior refusal to submit to a chemical test. An individual's subsequent consent and/or request to take a chemical test should be considered as curing his prior refusal when: it is made within a reasonable time after the prior refusal; when a test administered pursuant to the subsequent consent would still be accurate; when testing personnel, equipment and facilities are still readily available; when honoring such request for a test will result in no substantial inconvenience or expense to the police; and when the individual involved has been in continuous police custody and under observation since the time of his arrest. Id.
We conclude these criteria have been met in the present case. Appellant reconsidered his decision and requested that he be given the test within two to three minutes after his prior refusal to take it and before either he or Trooper Futral had left the testing room. Further, no one else was using the testing machine at the time and Trooper Futral testified it would have taken "about another minute" to set the machine to administer a test to appellant. Under these circumstances, we believe appellant timely recanted his prior refusal to take the breath alcohol test.
Accordingly, we reverse the March 16, 1989 decision of the DPS suspending appellant's driving privileges. The costs of this appeal in the amount of $222.70 are to be borne by DPS.
REVERSED.
NOTES
[1] An individual who refuses to submit to a chemical test for intoxication under the Implied Consent Law, La.R.S. 32:661 et seq., is subject to a suspension of his driving privileges for one hundred and eighty (180) days upon his first refusal and five hundred forty-five (545) days upon his second or subsequent refusal occurring within five years of the first refusal. La. R.S. 32:666 and 667.