Ronald W. LIVELY, Appellant,

v.

STATE of Alaska, Appellee.

No. 1100.

Court of Appeals of Alaska.

Jan. 4, 1991.

Gerald E. Huber, Kodiak, for appellant.

George W. Edwards, Asst. Dist. Atty., Nathan Callahan, Dist. Atty., Kodiak, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, District Court Judge.[*]

## OPINION

BRYNER, Chief Judge.

Ronald W. Lively was convicted of refusal to submit to a chemical test, AS 28.35.-032, after a trial on stipulated facts before Kodiak Magistrate Anna M. Moran. He appeals his conviction on several grounds. We affirm.

On June 1, 1989, Lively was arrested for driving while intoxicated (DWI) by State Trooper Tom Martin. At the Kodiak Police Station, Martin read the implied consent form to Lively. Lively indicated that he understood the implied consent warnings. He refused to take the Intoximeter test. Martin did not ask Lively why he was refusing to take the test, nor did he advise Lively that he had a right to telephone an attorney before deciding whether to take the test.

At the evidentiary hearing on his motion to suppress, Lively testified that when he refused to take the test, he was concerned about the accuracy of the Intoximeter machine because of an experience he had had nine years earlier in which he had taken a breathalyzer exam which registered less than .10, but then the arresting officer hit the side of the machine to make it register over .10.

After charging Lively with refusal, Martin turned him over to the jail custodians and returned to the Alaska State Trooper Station. While they prepared the paperwork for his admission to the jail, the jail custodians allowed Lively to speak with his brother for a few minutes and to smoke a cigarette. After being in custody at the jail for approximately ten minutes, Lively asked the jail custodians if he could take the breath test. His request was refused on the grounds that he had already been arrested and the arresting officer had left the building. Had Martin been called by the jail custodians, he would have been available and willing to come back to the station to administer the breath test. The additional delay in administering the test would have been approximately one-half hour.

Lively was charged with DWI and refusal. He filed a pretrial motion to suppress evidence of his refusal on the grounds that Martin had not inquired into the nature of his refusal and had not advised him that he had a right to telephone an attorney before deciding whether to take the test. The motion was denied. Lively also made a pretrial motion for a jury instruction on the defense of subsequent consent, a proposed affirmative defense to the refusal charge. This motion was also denied.

On January 18, 1990, a bench trial was held on Count II, the refusal charge. The case was tried on a set of stipulated facts that were approved by the trial court. Lively stipulated that at the time he refused to take the chemical test, he either knew or should have known that the chemical test was requested as potential evidence in connection with the investigation of the charge of DWI. The parties stipulated: (1)

---

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

that the elements of the offense of refusal to submit to a chemical test of the breath had been established beyond a reasonable doubt; and (2) that if the affirmative defense of subsequent consent, as proposed by Lively, was a proper defense to refusal of the breath test, it had been established by a preponderance of the evidence. The trial court ruled that subsequent consent was not a proper defense to a refusal charge in Alaska and entered a guilty verdict. Following Lively's conviction for refusal, the state dismissed Count I, the DWI charge.

## RIGHT TO CONTACT COUNSEL

■ Lively argues that the trial court should have suppressed the evidence of his refusal to take the breath test on the grounds that Martin did not advise him that he had a right to contact counsel before deciding whether to take the test. This argument is foreclosed by our holding in *Anderson v. State*, 713 P.2d 1220, 1221 (Alaska App.1986), that the arresting officer has no duty to inform a DWI arrestee of the right to have counsel present before a breathalyzer test is administered. *See also Svedlund v. Anchorage*, 671 P.2d 378, 382 (Alaska App.1983), in which we held that the breathalyzer exam is not a "critical stage" at which the right to have counsel attaches.

Lively urges us to overrule *Svedlund* and *Anderson* and hold that the breath test is a critical stage of a criminal proceeding at which the right to counsel attaches. He argues that when a DWI arrestee is asked to take a breath test, the proceeding has passed from the investigatory stage to the accusatory stage. He also argues that since there is a mandatory waiting period before the breathalyzer exam can be administered, there is no reason that the arrestee should not be given an opportunity to consult with counsel during that period. We considered and rejected these arguments in *Svedlund* and *Anderson,* and we are not persuaded to overrule those decisions in this case.

## OFFICER'S INQUIRY INTO THE NATURE OF THE REFUSAL

■ Lively argues that the court should have suppressed the evidence of his refusal because Martin did not inquire into the nature of the refusal. He relies on *Graham v. State*, 633 P.2d 211 (Alaska 1981). The defendant in *Graham* was arrested, advised of her *Miranda* [1] rights, and asked to submit to a breathalyzer test. She refused to take the test. As a result of Graham's refusal, the Department of Public Safety revoked her driver's license for 90 days. On appeal from the administrative revocation of her license, Graham argued that because she was first advised that she need not answer any questions, and then asked if she would take the breathalyzer test, she was confused as to whether she was required to respond to the request to take the test. The supreme court held:

> [W]here an arrested person refuses to submit to a breathalyzer test, the administering officer must inquire into the nature of the refusal and, if it appears that the refusal is based on a confusion about a person's rights, the officer must clearly advise that person that the rights contained in the *Miranda* warning do not apply to the breathalyzer examination.
>
> The defendant motorist, however, has the burden of showing that he or she was in fact confused.

*Id.* at 215 (citation omitted).

The *Graham* rule is not applicable here. Lively had not been advised of his *Miranda* rights at the time he was asked to consent to the breath test. The potential for confusion about which the court in *Graham* was concerned was not present in this case. The *Graham* court made it clear that the confusion engendered by the reading of both the *Miranda* warnings and the implied consent warning was the basis for its rule:

> As was done in this case, *Miranda* warnings will undoubtedly be given in many cases, shortly after the alleged offender is taken into custody. Therefore, care

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

must be taken to insure that the arrested person is not misled about his or her rights, or the absence thereof, under the implied consent statute. *Id.* at 214. Because the *Miranda* warnings had not been given to Lively at the time he was asked to submit to chemical testing, there was no need for the officer to inquire into whether those warnings had caused Lively to be confused about his rights.

## DEFENSE OF SUBSEQUENT CONSENT

Prior to trial, Lively moved for the inclusion of a jury instruction setting forth the affirmative defense that by subsequently consenting to take a chemical test, the defendant can "cure" his initial refusal. Lively's proposed instruction read:

Defendant Ronald W. Lively has been charged in Count II of the complaint in this case with refusal to submit to a chemical test of his breath.

It is an affirmative defense to this charge that defendant, after prior refusal, subsequently consented to take the test under the following circumstances:

1. Subsequent consent must be given while the defendant is still in police custody.

2. The subsequent consent must be given at a time when the police would not be substantially inconvenienced.

3. The subsequent consent must be given before the delay would substantially affect the outcome of the test.

Therefore, if you find it more likely than not, that the defendant subsequently consented to submit to a chemical test of his breath and that (1) defendant was still in police custody, (2) the police would not be substantially inconvenienced, and (3) the delay would not substantially affect the outcome of the test, then you shall find the defendant not guilty of refusal to submit to a chemical test as charged in Count II.

Whether to adopt subsequent consent as an affirmative defense to the charge of refusal to submit to a chemical test is an issue of first impression in Alaska. The courts of several other states have decided this same issue in the context of civil or administrative license revocations, but it appears that no appellate court has decided whether subsequent consent should be a defense to a criminal charge of refusal to submit to a chemical test.

There is a split of authority among the states that have decided whether an initial refusal to take a chemical test can be cured by a subsequent consent.

A substantial minority of the courts that have considered the subsequent consent issue have given effect to subsequent consents in some circumstances. *See Standish v. Department of Revenue, Motor Vehicle Division,* 235 Kan. 900, 683 P.2d 1276 (1984); *State v. Moore,* 62 Haw. 301, 614 P.2d 931 (1980); *Lund v. Hjelle,* 224 N.W.2d 552 (N.D.1974); *Matter of Smith,* 115 Idaho 808, 770 P.2d 817 (App.1989); *Larmer v. State Department of Highway Safety,* 522 So.2d 941 (Fla.App. 4 Dist. 1988); *Stone v. McCullion,* 27 Ohio App.3d 112, 500 N.E.2d 326 (1985); *Gaunt v. Motor Vehicle Division, Department of Transportation,* 136 Ariz. 424, 666 P.2d 524 (App.1983); *Zahtila v. Motor Vehicle Division, Department of Revenue,* 39 Colo.App. 8, 560 P.2d 847 (1977).

As the state points out in its brief, all of these cases involve civil or administrative license revocations, rather than criminal charges for refusal to submit to a chemical test. However, the same is true of the cases cited as rejecting the subsequent consent rule. Apparently, although all fifty states have enacted implied consent laws making license suspension the automatic penalty for refusal to submit to a chemical test, only Alaska and Nebraska have made refusal a criminal offense in and of itself. 4 R. Erwin, *Defense of Drunk Driving Cases* § 33.00 at 33–3—33–5 (3d ed. 1990).

There are two basic rationales behind the adoption of the rule that a subsequent consent can cure a prior refusal. The first reason is fairness to the arrestee. The Arizona Court of Appeals held:

Although an absolute rule preventing a subsequent consent after an initial refusal has the advantage of granting unmistakable clarity to the defendant's obli-

gation under the implied consent law, it could lead to unnecessarily harsh and self-defeating results.

*Gaunt,* 666 P.2d at 527. The Arizona court also cited 3 R. Erwin, *Defense of Drunk Driving Cases* § 33.06 at 33–78 (3d ed. 1983), which characterizes the rule of allowing subsequent consent as "more logical and fair" than the majority rule. *Id. See also Moore,* 614 P.2d at 935.

The other basis for the subsequent consent rule is the belief that this rule best furthers the purpose of the implied consent statutes by encouraging the administration of chemical tests in as many cases as possible. *Standish,* 683 P.2d at 1280; *Smith,* 770 P.2d at 821; *Gaunt,* 666 P.2d at 527.

The majority rule is that a refusal cannot be vitiated by a subsequent consent. *Schroeder v. Department of Motor Vehicles,* 772 P.2d 1278 (Nev.1989); *Wisch v. Jensen,* 221 Neb. 609, 379 N.W.2d 755 (1986); *Peterson v. State,* 261 N.W.2d 405 (S.D.1977); *Harlan v. State,* 113 N.H. 194, 308 A.2d 856 (1973); *Krueger v. Fulton,* 169 N.W.2d 875 (Iowa 1969); *Mossak v. Commissioner of Public Safety,* 435 N.W.2d 578 (Minn.App.1989); *Currier v. State,* 20 Wash.App. 16, 578 P.2d 1325 (1978); *People v. Shorkey,* 23 Ill.App.3d 662, 321 N.E.2d 46 (1974); *Commonwealth v. Stay,* 114 Pa.Cmwlth. 532, 539 A.2d 57 (1988); *Zidell v. Bright,* 264 Cal.App.2d 867, 71 Cal.Rptr. 111 (1968); *State v. Corrado,* 184 N.J.Super. 561, 446 A.2d 1229 (App.Div.1982).

Most courts that have rejected the subsequent consent rule have done so when presented with a factual scenario involving a thirty to ninety minute delay between the initial refusal and the subsequent consent. However, a rigid application of the bright-line rule is demonstrated in *Wisch,* 379 N.W.2d at 756, in which the Nebraska Supreme Court held that a refusal could not be cured by a subsequent consent a mere thirty seconds after the initial refusal, while the breathalyzer technician was still in the room with the defendant. *See also Mossak,* 435 N.W.2d at 579 (refusal was not vitiated by consent after five to ten minute delay, when arresting officer was on his way out of the building); *Department of Transportation v. Cohen,* 99 Pa. Cmwlth. 466, 512 A.2d 1365, 1366 (1986) (refusal was not cured by subsequent consent coming within "a matter of minutes").

As is the case with the minority rule, there are two basic rationales for the bright-line rule that a refusal cannot be rescinded by a subsequent consent. The first is the concern that the reliability of the test results diminishes with the passage of time, thus allowing arrestees to manipulate their test results by delaying their consent. The Nevada Supreme Court's analysis is typical of this reasoning:

> One immediate purpose of the implied consent statutes is to obtain the best evidence of a suspect's blood alcohol content at the time when the arresting officer reasonably believes him to be driving under the influence. The statutes contemplate that police officers administer the test without unreasonable delay because the effectiveness and reliability of a breathalyzer as well as a blood test decline with the passage of time. Therefore, no sound reason exists to give a driver the opportunity to delay a test to his benefit, and which would be contrary to the implied consent statutes' purpose of obtaining an accurate indication of his condition.

*Schroeder,* 772 P.2d at 1280 (citations omitted). *See also Peterson,* 261 N.W.2d at 408; *Harlan,* 308 A.2d at 858; *Currier,* 578 P.2d at 1326.

The other rationale for the bright-line rule is that it is unreasonable to expect the arresting officer to consider a refusal as conditional, and to require the officer to remain available to test the arrestee in the event of a subsequent change of heart. See *Schroeder,* 772 P.2d at 1280; *Harlan,* 308 A.2d at 858; *Krueger,* 169 N.W.2d at 879; *Shorkey,* 321 N.E.2d at 46; *Zidell,* 71 Cal.Rptr. at 111.

■ Having balanced the opposing rationales of the minority and majority views, we are inclined toward the minority view allowing the subsequent consent defense under some circumstances. We nevertheless decline to adopt the defense in the

broad form proposed by Lively. Lively's proposed instruction was considerably more sweeping than those adopted by the minority jurisdictions that permit subsequent consent to be raised. Courts of those jurisdictions have imposed various requirements as elements of the defense, *e.g.:* that the testing equipment and/or test administrator be still readily available at the time of the consent; that the arrestee has been in the continuous custody of the arresting officer and under observation for the entire time; and that the consent come within a reasonable time after the refusal.

These elements are not present in Lively's case. When Lively offered his subsequent consent, the arresting officer had already turned him over to jail custodi-

ans and left the building. While at the jail, Lively had been allowed to have contact with his brother and had tried to smoke a cigarette. Although we do not foreclose the possibility of adopting a more narrowly circumscribed subsequent consent defense in an appropriate case, we decline to adopt the defense in a form broad enough to encompass Lively's conduct in this case.[2]

Lively's conviction for refusal to submit to a chemical test is AFFIRMED.

---

**2.** We emphasize that the state always bears the burden of proving, as an element of the offense of refusal, that the defendant unequivocally refused to take a breath test; the affirmative defense of subsequent refusal assumes that the state has met this burden. When an arrestee initially refuses a breath test but has a change of heart shortly thereafter—while still in the presence of the arresting officer and the breath testing machine—the subsequent consent will be relevant on the issue of whether the initial refusal was unequivocal. To the extent that it is relevant on this issue, evidence of consent is independently admissible and may be relied on by the accused regardless of whether the affirmative defense of subsequent consent has been formally adopted.