849 P.2d 400 (1993)
Michael BALDWIN, Appellee,
v.
STATE of Oklahoma, ex rel., DEPARTMENT OF PUBLIC SAFETY, Appellant.
No. 79290.
Supreme Court of Oklahoma.
March 30, 1993.
Larry K. Lenora, Erwin, Butts & Lenora, P.C., Chandler, for appellee.
Blair Easley, Jr., Oklahoma Dept. of Public Safety, Oklahoma City, for appellant.
*401 ALMA WILSON, Justice:
On September 5, 1991, the Department of Public Safety, appellant, revoked the driving privileges of Michael L. Baldwin, the appellee, for a period of one year pursuant to the Implied Consent Law.[1] The appellee had refused to take a test to determine the alcohol content of his breath. The appellee appealed his revocation to the *402 district court.[2] The district court vacated the order of the appellant and restored the appellee's drivers license. The Court of Appeals reversed and remanded with instructions to deny the appellee's petition. Certiorari was granted to decide whether the blood or breath test has been refused if a motorist initially declines the test but reconsiders and asks to take the test shortly thereafter. We hold that the motorist has not refused the test if the assent is timely and given unequivocally.
The following facts are taken from the findings of facts by the trial judge. On July 17, 1991, in Lincoln County, an Oklahoma Highway Patrol trooper made a valid probable cause stop and arrest of the appellee. The stop was made about eighteen miles from the Lincoln County Sheriff's office. The trooper asked the appellee to take a breathalyzer or blood test to determine the alcohol level in the appellee's blood. The appellee asked to speak to a lawyer, but the trooper responded that no such right existed relative to his consent or refusal to take the test. The appellant then refused the test. He was readvised of his rights under the Implied Consent Law and again refused. The trooper took him to the Lincoln County Sheriff's office.
Upon their arrival, before the appellee was placed in a cell and before the arresting officer filled out the "Officers Affidavit and Notice of Revocation" the appellee told the trooper that he wished to take the breathalyzer test. The trooper replied that the appellee was too late and refused to administer the test. The officer then completed his affidavit required by 47 O.S. 1991, § 754. The trial court found that the appellee offered to take the test almost immediately after being transported to the location of the breathalyzer machine. He further found that the officer was neither delayed in performing his duties nor required to wait to determine if the appellee would change his mind.
The trial transcript reveals that the time between the appellee's initial refusal and his subsequent recantation was between five and ten minutes. The officer testified that if the test had been administered when the appellee requested it, the test would have remained valid. He testified that other than the policy of not administering the test after a refusal, the test could have been administered. The appellee was still in the custody of the arresting officer.
Title 47 O.S. 1991, § 753 provides in pertinent part:
If a conscious person under arrest refuses to submit to testing of his or her blood or breath for the purpose of determining the alcohol concentration thereof, or to a test of his or her blood, saliva or urine for the purpose of determining the concentration of any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance, none shall be given... .
The appellant argues that the statute is clear and unambiguous, that if a motorist refuses the test he cannot subsequently change his mind and be tested. The appellant asserts that even if the statute is ambiguous or uncertain, the interpretation by the agency, appellant, is entitled to the highest respect from the courts, especially when the administrative construction is definitely settled and uniformly applied for a number of years.[3] But the issue before this Court involves the definition of the word "refusal" in § 753. The appellant essentially claims that once a motorist has spoken, he cannot recant. But in practice, as the trial court observed, the arresting officers give every motorist more than one opportunity to submit to testing. The facts before this Court make the issue one of first impression. The construction of this statute is within the jurisdiction of this Court. Despite the claims of the appellant to the contrary, the appellant has established by its own admission that the appellant does not clearly apply a certain construction *403 to determine what acts of a motorist constitute a refusal to submit to testing. Additionally, in this and other jurisdictions, what constitutes a refusal is an issue determined by the appellate court system, and not by the administrating agency.
In Robertson v. State ex rel. Lester, 501 P.2d 1099 (Okla. 1972), Robertson was arrested for operating a motor vehicle upon the public highway while under the influence of alcohol. Immediately after the arrest, the officer asked that Robertson submit to a chemical test, either breath or blood, to determine the content of the alcohol in his blood. He refused and was denied the opportunity to consult with counsel before deciding whether or not to submit to the test. This Court held that the implied consent statute does not sanction a qualified or conditional refusal, so that unwillingness to submit to a test before consulting with counsel constitutes a refusal. The appellant has cited this case to support its position that a refusal is not negated by a subsequent request to take the test. The appellant quotes:
The decision to submit to a chemical test is not one which requires debate, consultation, or negotiation, but calls for a simple yes or no to the request for submission. Because of the rapidity with which the passage of time and the physiological processes tend to eliminate alcohol ingested by the body, and because of the remedial intent of the statute anything less than an unqualified consent by the licensee to the requested test constitutes a refusal to do so.

Robertson, 501 P.2d at 1104, emphasis provided by appellant. From this the appellant concludes that once a person refuses the test, the test cannot be given.[4] However, the Oklahoma cases cited by the appellant to support its position do not involve refusal and subsequent timely recantation. As previously asserted, this issue is one of first impression in this jurisdiction. Robertson has been cited by the Supreme Court of Hawaii, among cases from four other jurisdictions, as holding that a refusal to submit to the test is binding where a motorist is offered the test, refuses or delays in consenting, but subsequently changes his mind and requests the test. State v. Moore, 62 Haw. 301, 614 P.2d 931, 935 (1980). Robertson does not so hold.
The Hawaii case involved a motorist arrested for driving under the influence of intoxicating liquor. That state also has an implied consent law, and pursuant to that law the motorist was advised of the requirements and sanctions of the law. The motorist refused to sign anything or take the test. After refusing to sign the Honolulu Police Department's Implied Consent Form, the motorist testified that he demanded to be tested on eight separate occasions, the first demand within thirteen minutes of refusing to sign the form. After considering the reasoning of the jurisdictions holding that a refusal cannot be recanted, the Hawaii court held:
We ... decline to hold with a rule of law which would rigidly and unreasonably bind an arrested person to his first words spoken, no matter how quickly and under what circumstances those words are withdrawn. We consider the better rule to be one which takes into consideration the fairness to all parties of permitting an arrested person later to change his mind.
Moore, 614 P.2d at 935.
Alaska recently reached the same result on the issue of whether subsequent consent is a defense to the charge of refusal to submit to a chemical test under implied consent laws. In Alaska, refusal to submit to a chemical test is a criminal offense in and of itself. Lively v. State, 804 P.2d 66, 69 (Alaska App. 1991). That court lists two basic rationales behind the adoption of the rule that subsequent consent can cure a *404 prior refusal. The first reason is fairness to the arrestee. The court quotes from Gaunt v. Motor Vehicle Div., Dep't of Transp., 136 Ariz. 424, 666 P.2d 524, 527 (Ariz. Ct. App. 1983):
Although an absolute rule preventing a subsequent consent after an initial refusal has the advantage of granting unmistakable clarity to the defendant's obligation under the implied consent law, it could lead to unnecessarily harsh and self-defeating results.
The Alaska court stated that the other basis for the subsequent consent rule is the belief that this rule best furthers the purpose of the implied consent statutes by encouraging the administration of chemical tests in as many cases as possible. Lively, 804 P.2d at 70. Using this second rationale as the basis for its holding, the Supreme Court of Kansas reasoned:
The chemical testing system provided under our implied consent law is important because it provides the best available and most reliable method of determining whether a driver is `under the influence' of alcohol. It protects both the accused and the public. A refusal to submit to the test, on the other hand, invokes serious consequences for the person arrested. We believe that the administration of the test should be encouraged and the person arrested should be given every reasonable opportunity to submit to it. For this reason, we hold that an initial refusal may be changed or rescinded, and if rescinded in accordance with the following rules, cures the prior refusal.
Standish v. Department of Revenue, Motor Veh. Div., 235 Kan. 900, 683 P.2d 1276, 1280 (1984). The Kansas court held that to be effective, the subsequent consent must be made:
(1) within a very short and reasonable time after the prior first refusal;
(2) when a test administered upon the subsequent consent would still be accurate;
(3) when testing equipment is still readily available;
(4) when honoring the request will result in no substantial inconvenience or expense to the police; and
(5) when the individual requesting the test has been in the custody of the arresting officer and under observation for the whole time since arrest.
Standish, 683 P.2d at 1280.
The more rigid view is illustrated by Schroeder v. Department of Motor Vehicles, 105 Nev. 179, 772 P.2d 1278 (1989). The Supreme Court of Nevada held that a subsequent request to take a chemical sobriety test does not vitiate a prior refusal. The arrested motorist in Schroeder refused a chemical sobriety test for at least forty minutes. After the arresting officer left and returned to his patrol the motorist changed his mind. The Nevada court affirmed the judgment of a district court, which refused a petition for judicial review of the decision of the department of motor vehicles which revoked the motorist's driving privileges. As a rationale for its holding, the Nevada court also cited the two basic rationales used in the jurisdictions that implement the "bright-line" rule. The court explained that expecting an arresting officer to consider a refusal as conditional so that he must remain near the arrested person for an extended period of time, is unreasonable. Such a rule would require the arresting officer to drop other duties to arrange for a belated test that the motorist had already refused after receiving warnings of the consequences of his refusal. Schroeder, 772 P.2d at 1280. The second rationale is that a driver must not be given the opportunity to unreasonably delay a test because one immediate purpose of the implied consent statutes is to obtain the best evidence of a motorist's blood alcohol content at the time an arresting officer reasonably believes him to be driving under the influence. Schroeder, 772 P.2d at 1280.
Comparing the rule in Standish to the facts in Schroeder, the two cases are clearly consistent. Because the arresting officer was no longer present, the same fact situation in Kansas would appear to lead to the same result as that reached by the *405 Nevada court. The rationale for Schroeder would not apply to the case at bar because a decision to test the appellee after his recantation would neither have inconvenienced the arresting officer nor resulted in an unreasonable delay in administering the test. The comparison of Standish and Schroeder exemplifies the difficulty in artificially categorizing jurisdictions as two separate camps. The cases represent more of a continuum. The resolution of each case depends upon the facts with consideration of the implications on law enforcement and the legislative purpose in enacting the implied consent statutes.
Wisch v. Jensen, 221 Neb. 609, 379 N.W.2d 755 (1986) is cited by other jurisdictions as a rigid application of the "bright-line" rule.[5] The case is cited by those jurisdictions for the fact that the motorist changed his mind and agreed to take a breath test within thirty seconds of his refusal but the arresting officer refused to allow the test. The facts of the case reveal that the motorist was profane, cocky and uncooperative. He had been told when he was arrested that he would be asked to take a breath test. When he arrived at the police station where the test was to be given, the officer twice read to the motorist an implied consent advisement postarrest form including the consequences of refusal. The motorist both times refused to sign the form. The officer dismissed the technician. But as she was leaving the motorist changed his mind. Even the jurisdiction recognized as being the most restrictive gave a belligerent motorist advanced warning, and two opportunities to agree to the test.
After analyzing the two lines of cases, the Court of Appeals of Idaho concluded:
The choice between these two schools of thought is not an easy one. The state, particularly at oral argument, has made a strong presentation in favor of the `bright line' rule. If our choice turned simply upon balancing the asserted benefits of simplicity and convenience under the `bright line' rule against the individualized fairness sought to be achieved by the flexible rule, we would find the outcome very problematic indeed. But when we consider the additional policy rationale for the flexible rule  that it better serves the public interest in obtaining scientific information about the blood alcohol levels of motorists accused of driving under the influence, we believe the issue must be resolved in favor of the flexible rule.
Matter of Smith, 115 Idaho 808, 770 P.2d 817, 821 (Ct.App. 1989). The Idaho court held that a motorist could reconsider after initially declining to take the test, if he gave a timely and unequivocal assent. The Idaho court declared that a delayed assent would be deemed timely only if it were given: (1) While the motorist was still in police custody; (2) When testing equipment and personnel were readily available; and (3) Before the delay produced by the initial declination would cause the outcome of the test to be materially affected.[6] The court placed the burden upon the motorist to prove by a preponderance of the evidence that the requirements were satisfied.[7]
We are not persuaded that law enforcement officers would be inconvenienced by allowing the arrestee to change his mind when he has arrived at the place where the test would be conducted. In the case at bar, the appellee was still in the custody of the arresting officer, the test equipment was readily available, and no substantial delay had taken place from the time of the refusal to the time the appellee recanted. Even the appellant admits, and the facts from our sister jurisdictions reveal,[8] that arrested motorists are typically given more than one opportunity to agree to take the blood alcohol test. Arresting officers apparently recognize that the circumstances of the arrest along with the altered mental state of a drunk driver could result in an *406 initially rash decision, which a few minutes of reflection by a ride to a jail in a patrol car could correct. We are persuaded that when the facts of the cases arising in sister states are examined, there is little authority for an inflexible rule.
As stated above, we hold that a motorist has not refused the test mandated by the Implied Consent Law if the assent is timely and given unequivocally. We adopt the five-element test for timeliness as provided by the Supreme Court of Kansas in Standish, quoted above.[9] The burden of proof is on the motorist, who must assert the subsequent consent as an affirmative defense to an allegation of refusal to take the implied consent test.
Accordingly, the opinion of the Court of Appeals is VACATED. The judgment of the trial court is AFFIRMED.
HODGES, C.J., LAVENDER, V.C.J., HARGRAVE, OPALA, KAUGER and SUMMERS, JJ., concur.
SIMMS and WATT, JJ., dissent.
WATT, Justice, with whom SIMMS, J. joins, dissenting.
I dissent. Today the majority adopts, by it's own admission, the minority rule with regard to the issue of consent to the taking of a breath test. I submit, with all due respect, that this position is contrary to existing statutory law. Title 47 O.S. 1991, § 753 is clear. If (1) a conscious person (2) under arrest (3) refuses to submit to testing none shall be given. Clearly the defendant met all three of the above requirements and at that instant the highway patrolman under the clear language of the statute had no further obligation to administer a test. Section 753 says "If a conscious person ... refuses to submit to testing none shall be given." [Emphasis added.]
Under today's pronouncement a defendant may first ignore the officer's request and later change his mind as long as he satisfies three requirements. First, he is in custody. Second, there is testing equipment readily available. Third, he requests a breath test before the delay caused by his initial refusal materially affects the outcome of the test.
The majority's holding gives defendants unwarranted latitude concerning when they will take a breath test. A defendant arrested for DUI is ordinarily held for a minimum of four hours. Breath testing equipment is located in the jail in most counties. A defendant may be able to wait as long as four hours after his arrest with impunity before he finally submits to the test. Thus, a defendant who was legally drunk when arrested may not be when he finally takes a breath test.
The majority opinion will create another kind of mischief. A defendant may create a defense to revocation if he requests, but is denied, a breath test after having earlier refused to take one. The problem is graphically demonstrated in Application of Kunneman, 501 P.2d 910, 912 (Okla. App. 1972), released by the Supreme Court for official publication Sept. 25, 1972. In Kunneman, the arresting officer testified that he refused the defendant's request to a breath test because he had asked the defendant to submit five times earlier, and didn't believe the defendant meant to submit after he made his request. The Court of Appeals held, properly in my view, that the defendant could not claim to have been wrongfully deprived of a right to a breath test "as he had refused to submit to the test in the first instance." The rule announced by the majority of this Court today would require a result different than that reached by the Court of Appeals in Kunneman.
*407 The Minnesota Court of Appeals interpreted a statute containing the language of § 753 that, if a test is refused, "none shall be given." Mossak v. Commissioner of Public Safety, 435 N.W.2d 578 (Minn.App. 1989). Mossak requested a test five to ten minutes after having refused a request that he take one. The court held that the Minnesota statute and the cases interpreting it "preclude us from applying a flexible rule such that a refusal could not be found in the circumstances of this case." Mossak, id. 435 N.W.2d at 579.
The approach taken by the majority today makes bad law. It represents flaccidity, not flexibility. Satisfying its requirements will involve the courts in a time consuming examination of time frames and officer availability. Worse, it will require police officers to remain off the street for so long as it takes a defendant to make up his mind about taking a test.
The majority rule rejected by this Court's majority opinion today is the better rule. The police officer, who is sober, not the defendant who has, after all, just been arrested for drunkenness, should have the discretion to decide when the defendant has refused the test. The majority rule prevents the defendant from manipulating the process by later complaining that he really requested but was denied a test.
I submit that the legislature did not have such a result in mind when it passed § 753. Today's pronouncement casts a cloud upon a clearly defined statutory statement of public policy enacted by the people of this state through their elected representatives that they want those who refuse a test to be subject to mandatory suspension of their driving privileges. I cannot accede to this position in light of the clear dictates of § 753.
NOTES
[1] 1967 Okla. Sess. Laws, ch. 86, §§ 1-12, effective January 1, 1969. The act is now codified at 47 O.S. 1991, § 751 et seq.
[2] 1988 Okla. Sess. Laws, ch. 242, § 13, now codified at 47 O.S. 1991, § 755.
[3] The appellant cites Oral Roberts University v. Oklahoma Tax Comm'n, 714 P.2d 1013, 1014-1015 (Okla. 1985).
[4] The appellant also cites: Snodgress v. State ex rel. Dept. of Public Safety, 551 P.2d 259 (Okla. 1976) (arrested party conditioned taking the test upon the presence of his doctor); State ex rel. Dept. of Public Safety v. Lance, 542 P.2d 506 (Okla. 1975) (arrested party qualified his consent upon the condition that the test be administered by a physician of his choosing); Phares v. Dept. of Public Safety, 507 P.2d 1225 (Okla. 1973) (arrested party refused to submit to the test before consulting with counsel).
[5] Lively v. State, 804 P.2d 66, 70 (Alaska App. 1991), and Matter of Smith, 115 Idaho 808, 770 P.2d 817, 821 (Ct.App. 1989).
[6] Matter of Smith, 770 P.2d at 820.
[7] Matter of Smith, 770 P.2d at 821.
[8] Wisch v. Jensen, 221 Neb. 609, 379 N.W.2d 755, 756 (1986).
[9] The Court of Appeals case cited by the dissent, Application of Kunneman, 501 P.2d 910 (Okla. Ct. App. 1972), would not sustain the subsequent consent defense because there was never an unequivocal consent. According to the Oklahoma Highway Patrol trooper administering the test, Kunneman was given four or five opportunities to blow into the breathalyzer machine, but each time he sucked on it instead. The trooper properly concluded that Kunneman was refusing to take the test, even though he had verbally agreed. To continue to allow the motorist to toy with the implied consent test would result in substantial inconvenience to the police authority, and violate the fourth element of the Standish test.