[No. 5303–1. Division One. May 8, 1978.]

JOHN ROBERT CURRIER, *Appellant,* v. THE DEPARTMENT OF MOTOR VEHICLES, *Respondent.*

*Johnston & Neal, Inc., P.S.,* and *Levy S. Johnston,* for appellant.

*Slade Gorton, Attorney General,* and *James R. Silva, Assistant,* for respondent.

JAMES, J.—Acting pursuant to RCW 46.20.308, the "implied consent" statute, the Washington State Department of Motor Vehicles suspended John Currier's driver's license for refusing to submit to a Breathalyzer test. Currier appeals from an Island County Superior Court judgment which upheld the action of the Department.

On May 4, 1975, Currier was arrested by a Washington State Patrol officer for driving while under the influence of alcohol. He was taken to Island County Jail where he was advised of his *Miranda* rights and given the implied consent warnings as required by RCW 46.20.308. Currier asked to call an attorney and was informed that the call must be placed collect even though he had sufficient cash to pay for the call. He became angry and refused to make a collect call. He admits he was highly intoxicated at the time.

When the arresting officer offered him the Breathalyzer test, Currier refused. During the subsequent booking procedures, the county sheriff told Currier that his refusal to take the Breathalyzer test would result in an automatic 6–month suspension of his driver's license. Currier claimed he was unaware of the consequences of his earlier refusal and requested the Breathalyzer test. His request was refused.

The sheriff told Currier that the test had to be adminis-
tered in the presence of the arresting trooper who had
departed 10 to 15 minutes earlier.

Currier contends the court erred in finding that he
refused the Breathalyzer test. He argues first that he was
not given an opportunity to make an intelligent decision
and second that the sheriff should have administered the
test at Currier's request after the trooper had left. We do
not agree.

■ A driver advised of his rights under the implied
consent law is deemed to have had an opportunity to exer-
cise his intelligent judgment unless he objectively and
unequivocally manifests that he does not understand.
*Strand v. Department of Motor Vehicles*, 8 Wn. App. 877,
509 P.2d 999 (1973). The burden of showing that he made
his confusion apparent to the administering officer is upon
the driver. *Strand v. Department of Motor Vehicles, supra.*
It is not a defense that a conscious driver is too intoxicated
to understand the advice and respond intelligently.
*Department of Motor Vehicles v. Riba*, 10 Wn. App. 857,
520 P.2d 942 (1974); *Department of Motor Vehicles v.
McElwain*, 80 Wn.2d 624, 496 P.2d 963 (1972); *Junkley v.
Department of Motor Vehicles*, 7 Wn. App. 827, 503 P.2d
752 (1972).

In this case, there is evidence that Currier was conscious,
that he was properly advised of his rights under the implied
consent statute and thereafter objectively refused the test.
There is no evidence that he objectively communicated a
lack of understanding to the trooper. The trial court cor-
rectly concluded that Currier refused the Breathalyzer
tests.

■ Currier next contends that even though he initially
refused the test, his change of mind and later request to
take the test nullified his initial refusal. We find nothing in
the statute that would require the sheriff to administer the
test once there has been a refusal. To the contrary under
the statute, even if the sheriff had allowed Currier to take
the test, it would not have changed the effect of the initial

refusal. The sworn statement of an arresting officer that a properly informed accused refused the test mandates the suspension of his driver's license. RCW 46.20.308(3). *Skinner v. Sillas,* 58 Cal. App. 3d 591, 130 Cal. Rptr. 91 (1976).

One of the purposes of the implied consent statute is to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication. *Greenwood v. Department of Motor Vehicles,* 13 Wn. App. 624, 536 P.2d 644 (1975). The probative value of a chemical test for intoxication diminishes with the passage of time. *In re Martin,* 58 Cal. 2d 509, 374 P.2d 801, 24 Cal. Rptr. 833 (1962); *Ent v. Department of Motor Vehicles,* 265 Cal. App. 2d 936, 71 Cal. Rptr. 726 (1968). The purpose of the statute would be frustrated if a suspected intoxicated driver were allowed to stall and delay by changing his mind while the level of alcohol in his blood diminishes. The plain language of the statute requires that once there has been a legal refusal, "no test shall be given." RCW 46.20.308(3) provides in relevant part:

> If, following his arrest, the person arrested refuses upon the request of a law enforcement officer to submit to a chemical test of his breath, after being informed that his refusal will result in the revocation or denial of his privilege to drive, *no test shall be given.*

(Italics ours.) Currier was properly informed. He could not avoid the mandatory license suspension by later rescinding his initial refusal. *Greenwood v. Department of Motor Vehicles, supra.*

Affirmed.

FARRIS, C.J., and WILLIAMS, J., concur.