[No. 7676–1–I.   Division One.   September 2, 1980.]

ROBERT WOLF, *Appellant,* v. THE DEPARTMENT OF
MOTOR VEHICLES, *Respondent.*

*Bianchi, Tobin & Rinaldi, P.S.,* and *Albert A. Rinaldi, Jr.,* for appellant.

*Slade Gorton, Attorney General,* and *Kent Nakamura, Assistant,* for respondent.

SWANSON, J.—Robert Wolf appeals from a judgment upholding a determination by the Department of Motor Vehicles that his driver's license be revoked for 6 months pursuant to RCW 46.20.308. He contends there was insufficient evidence to support the finding that he refused to take a Breathalyzer test and that he should have been given an opportunity to take a second test.

In the early morning hours of February 12, 1976, the vehicle driven by defendant Wolf was observed crossing the centerline of a north Seattle street by Officer Jacobson of the Seattle Police Department. Jacobson suspected that Wolf was intoxicated and stopped him. Wolf appeared unsteady on his feet, and his breath had an odor of alcohol. Jacobson had Wolf perform some sobriety tests and then advised him of his *Miranda*[1] rights.

Wolf was placed under arrest and transported to the Wallingford precinct in north Seattle for videotaping and a chemical breath test. Prior to the taping and breath test, Wolf was allowed to call his attorney, Gale Hilyer, who

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

lived in Bellevue. Hilyer advised his client to take the breath test. However, Hilyer spoke by phone with an Officer Davis and said he wanted to be present when the breath test was administered. Officer Davis told Hilyer the test could not be delayed. Hilyer responded, "I can be there in fifteen to eighteen minutes, I guarantee you." Hilyer was reportedly told that it was against procedure to allow attorneys to be present for breath tests.

Wolf told the officers he wanted his attorney present for the test. He was advised they could not wait. He therefore agreed to take the test, but he said he had chewing tobacco in his mouth and wished to wash it out. According to Wolf, the officers would not let him leave to wash out his mouth. He therefore used a handkerchief to remove the tobacco, and then made an apparent effort to take the Breathalyzer test.

Officer Jacobson testified that Wolf took a breath and puffed out his cheeks, but he would not blow into the machine. Wolf's version was that he tried to expel his breath into the mouthpiece. He said an officer blocked his view of the machine, and he could not tell what was happening. After two or three tries, Wolf had not activated the machine, and Jacobson noted on a breath test admonitions form that Wolf refused to take the test.

By the time attorney Hilyer arrived at the Wallingford precinct, Wolf had been taken downtown for booking. Hilyer posted bail for Wolf, and the two proceeded to the fourth floor patrol office where Hilyer tried to arrange for Wolf to take another breath test. Hilyer was told by Officer Davis that Wolf had refused to take the breath test and another one would not be administered because of the passage of time since Wolf's arrest.

The defense put on testimony by a Breathalyzer expert that tobacco could possibly plug the machine and cause it to malfunction. The trial court, however, concluded that Wolf had failed to cooperate and that the defense had failed to show that the machine was not functioning.

■■ Appellant first assigns error to finding of fact No. 6, which reads:

After having been so informed [of the consequences of refusing to submit to the breath test], the petitioner submitted to a chemical test of breath, but did not properly blow into the machine as requested, thus constituting a refusal.

Unwillingness to cooperate in the administration of a Breathalyzer test is a refusal to take the test. *Strand v. Department of Motor Vehicles,* 8 Wn. App. 877, 509 P.2d 999 (1973). Whether the driver's conduct amounts to a refusal to take the test is a question of fact. The evidence here was in conflict. In contrast to the appellant's testimony that he attempted to force air into the machine was testimony by the administering officer who stated unequivocally that appellant did not blow into the machine. In addition, the appellant's own expert testified that although it was possible for the machine to be obstructed by tobacco, it was not probable. In the face of these versions, the trial court found that the appellant did not blow into the machine as requested, and that his refusal to blow amounted to a refusal to take the test. In his oral opinion, to which we may look to interpret the written findings, *Johnson v. Whitman,* 1 Wn. App. 540, 463 P.2d 207 (1969), the judge stated,

It seems to me that if we view this event in the light of common experience and realistically, that, one, if there was some impediment to the functioning of the machine or some impediment to the petitioner's functioning, that he would have done what any human being would have done, and that is to say, "I am not working," or, "The machine is not working," . . .

. . .

. . . I frankly think that different things would have happened under these circumstances if we had either a defective machine or the inability of the petitioner, Mr. Wolf, to blow into it.

■ It is evident that the trial court did not believe the appellant on the issue of whether he actually blew into the

machine. That finding is supported by substantial evidence in the form of the testimony by the administering officer and may not be disturbed on appeal. *Turner v. Department of Motor Vehicles,* 14 Wn. App. 333, 541 P.2d 1005 (1975).

■ Appellant argues, however, that under the circumstances of this case, the burden shifted to the department to show that the Breathalyzer machine was functioning properly. This was the issue presented in *Woolman v. Department of Motor Vehicles,* 15 Wn. App. 115, 547 P.2d 293 (1976). In *Woolman* the appellant placed the mouthpiece of the machine to her mouth and "'gave a little puff'". *Woolman,* at 116. When asked by the administering officer to blow harder, she said that was all she could do. The officer then wrote, "'Refused to take test' on the consent form". *Woolman,* at 116. We affirmed the revocation of Woolman's license, holding that it was not necessary that the department first make a showing that the machine was functioning properly, and that if the appellant was unable to blow an amount of air sufficient to activate the machine, the burden was upon her to present evidence excusing her inability to comply. Appellant here argues that he did present evidence excusing his inability to comply in the form of evidence that he was not allowed to wash the tobacco out of his mouth and expert testimony that tobacco particles possibly could plug the machine. Thus, the appellant argues, the burden shifted to the department to show that the machine was functioning properly.

It is true that evidence was presented from which it might be found that appellant tried to blow into the machine but could not comply because it was plugged by a particle of tobacco. However, that portion of the court's oral opinion set out above, when read in conjunction with the written finding that appellant did not properly blow into the machine, leaves no doubt that the trial court was not persuaded that appellant was unable to comply because the machine was plugged, or for any other reason.

Having determined that appellant's refusal to blow into the machine constituted a refusal to take the test, the burden did not shift to the department to show that the Breathalyzer was functioning properly. *Woolman v. Department of Motor Vehicles, supra.*

■ Because there is substantial evidence to support the trial court's finding that appellant refused to take the test, we may easily dispose of his next contention, that he should have been given an opportunity to take a second test. In *Currier v. Department of Motor Vehicles,* 20 Wn. App. 16, 578 P.2d 1325 (1978), we said that once the driver refuses to take the Breathalyzer test, he has no right to a subsequent test:

> The plain language of the statute requires that once there has been a legal refusal, "no test shall be given." RCW 46.20.308(3) provides in relevant part:
>> If, following his arrest, the person arrested refuses upon the request of a law enforcement officer to submit to a chemical test of his breath, after being informed that his refusal will result in the revocation or denial of his privilege to drive, *no test shall be given.*
>
> (Italics ours.)

*Currier,* at 19.

Lastly, we turn to the issue of appellant's right to counsel. Appellant does not specifically assert that the revocation of his driver's license should be reversed because he was denied his Sixth Amendment right to counsel. However, we are asked to rule, in effect, that such a right exists under the factual circumstances here presented. Appellant's position is seemingly bolstered by a decision of our Supreme Court handed down while this appeal was pending. In *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893 (1980), the court held that the time immediately following arrest for driving under the influence, when the defendant is in custody and must decide whether to submit to the Breathalyzer, is a critical stage in the criminal prosecution, and the defendant must be allowed access to legal counsel. Appellant argues that there is language in *Fitzsimmons*

supporting his contention that even though a license revocation proceeding is civil in nature, the right to counsel attaches.[2] He points specifically to the following: "[T]he implied consent statute does not affect the defendant's rights but instead forcefully demonstrates the need to allow the defendant access to counsel, if desired, to assist in making the decision whether to submit to chemical sobriety tests." *Fitzsimmons*, at 448.

However, we think that language means exactly what it says, that a criminal *defendant's* rights are not affected by the implied consent statute. Appellant here is not a defendant in a criminal prosecution. The courts of this state have frequently recognized that a license revocation proceeding is a civil proceeding separate and distinct from a criminal prosecution for driving under the influence. *See, e.g., Nowell v. Department of Motor Vehicles,* 83 Wn.2d 121, 516 P.2d 205 (1973); *Brewer v. Department of Motor Vehicles,* 23 Wn. App. 412, 595 P.2d 949 (1979); *Fritts v. Department of Motor Vehicles,* 6 Wn. App. 233, 492 P.2d 558 (1971).

Although *Fitzsimmons* left the issue undecided, it was not necessarily left open. For example, in ruling that the right to appointed counsel in misdemeanor cases enunciated in *Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972) only attaches in a case that actually leads to imprisonment, the United States Supreme Court observed: "Whether this question was indeed 'left open' in *Argersinger* depends upon whether one considers that opinion to be a point in a moving line or a holding that the States are required to go only so far in furnishing counsel to indigent defendants." *Scott v. Illinois,* 440 U.S. 367, 369, 59 L. Ed. 2d 383, 99 S. Ct. 1158 (1979). We are inclined to view *Fitzsimmons* as an opinion that goes only so far and not as a point on a line moving inevitably toward a rule requiring counsel in license revocation proceedings.

---

[2]The question is explicitly left undecided. *State v. Fitzsimmons, supra* at 450 n.2.

Other states have squarely addressed the issue and have decided it contrary to the position appellant urges here. *See State v. Severino,* 56 Haw. 378, 537 P.2d 1187 (1975); *Blow v. Commissioner of Motor Vehicles,* 83 S.D. 628, 164 N.W.2d 351 (1969). Those decisions are premised on the fundamental distinction between a license revocation under the implied consent law and a criminal prosecution. This court has observed previously that the distinction is more than simply one of nomenclature:

> Regardless of whether driving is a right or a privilege, the license revocation proceeding is not a criminal proceeding. The purpose of enacting RCW 46.20.308 was to protect the public, not to punish the licensee, though the threat of punishment may necessarily be intended to deter the drunken driver. The revocation of drivers' licenses for refusal to submit to the implied consent provisions of RCW 46.20.308 is a function of the Department of Motor Vehicles flowing from the police power of the state to regulate driving in the interest of the public welfare and safety. The proceeding to review that revocation is a civil administrative proceeding (*Connolly v. Department of Motor Vehicles,* 79 Wn.2d 500, 487 P.2d 1050 (1971)), entirely separate and distinct from the criminal charge for which the driver was arrested.

*Fritts v. Department of Motor Vehicles, supra* at 240–41.

Because the instant proceeding is civil as opposed to criminal in nature, no error can be predicated on the theory that appellant's right to counsel was violated.

■ However, even if the mandate of *Fitzsimmons* were applicable here, we think it was complied with. The court's opinion makes it clear that the State's duty is to insure only that the defendant have *access* to counsel. As the court stated: "The State is not required to insure under the preliminary circumstances of this and similar cases that the defendant is placed in face–to–face contact with counsel." *Fitzsimmons,* at 447. And, again, "The State must merely insure that the defendant can immediately contact counsel who can help him make the decision as to how his defense will be structured, and whether that defense requires the

attorney's physical presence at the scene of the charging." *Fitzsimmons,* at 448.

Here, appellant was allowed access to counsel. He was allowed to call his attorney and was given advice over the phone to the effect that he should take the Breathalyzer test. Admittedly, appellant's attorney told the officer he wanted to be present when the test was administered. But, as noted, face–to–face contact is not mandated, for what we think are obvious reasons. As we said in *Currier v. Department of Motor Vehicles,* 20 Wn. App. 16, 578 P.2d 1325 (1978) at page 19:

> One of the purposes of the implied consent statute is to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication. *Greenwood v. Department of Motor Vehicles,* 13 Wn. App. 624, 536 P.2d 644 (1975). The probative value of a chemical test for intoxication diminishes with the passage of time. *In re Martin,* 58 Cal. 2d 509, 374 P.2d 801, 24 Cal. Rptr. 833 (1962); *Ent v. Department of Motor Vehicles,* 265 Cal. App. 2d 936, 71 Cal. Rptr. 726 (1968). The purpose of the statute would be frustrated if a suspected intoxicated driver were allowed to stall and delay by changing his mind while the level of alcohol in his blood diminishes.

Under that same analysis, we do not think the officers are required to wait for the accused's attorney before administering the Breathalyzer test.

For the reasons herein expressed, the judgment of the trial court is affirmed.

JAMES, A.C.J., and DORE, J., concur.

Reconsideration denied October 21, 1980.