[No. 3951–II.  Division Two.  May 7, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. LOREN B. BENCE, *Appellant.*

*Jack L. Burtch,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *W. Dale Kamerrer, Deputy,* for respondent.

PETRIE, J.—Defendant, Loren B. Bence, appeals from a judgment and sentence imposed following his conviction by jury verdict of driving while under the influence of or affected by intoxicating liquor. We affirm.

Trial in Superior Court on January 4, 1979 produced the following scenario. Shortly before 3 a.m. on November 28, 1976 State Trooper Thomas Adams noticed a pickup truck on the Interstate 5 freeway at Olympia weaving from one lane to another and across the fogline at the shoulder of the road. When the weaving continued, Trooper Adams stopped the vehicle and approached it. The driver, defendant Bence, stepped out of the vehicle and "had to catch his balance against the door." Defendant experienced difficulty removing his driver's license from his wallet. He could neither stand on one foot nor walk heel–to–toe without losing his balance. In both attempts the trooper had to catch him in order to prevent his falling to the ground. Trooper Adams detected "an obvious odor of intoxicants on his breath," observed that he "had very red, bloodshot eyes, and his face was quite flushed." Adams described his speech as slurred.

Trooper Adams arrested defendant for driving while intoxicated and transported him to the Thurston County jail. While there defendant told the trooper that he had

consumed three beers in Hoquiam and had purchased a six–pack at a tavern. When asked whether he was under the influence of alcohol, Bence told Adams, "I think I am awfully tired and the combination, yes, I do." At 3:56 a.m., defendant's Breathalyzer test recorded a reading of 0.10 percent blood alcohol by weight. Apparently it is possible to record a reading to a third decimal point, but Trooper Adams testified that the actual reading is taken only to the next lowest second decimal point. Thus, a reading of 0.106, for example, would be recorded simply as 0.10. Trooper Adams acknowledged that he did not know whether defendant's blood alcohol content would have been higher or lower 1 hour previously when defendant was stopped on the freeway.

Defendant testified that he limps because of "a bad left leg," that he had been awake since 3 a.m. the previous morning, and that he was driving from Ocean Shores to Puyallup. He stopped at a tavern to cash a check, drank "[t]wo glasses of beer," bought a six–pack of beer, and drank one of those just "prior to observing the officer following me." He also testified that the truck was heavily loaded and he was weaving because of the overload.

Defendant took exception to the court's instruction which told the jury that a blood alcohol reading of 0.10 percent or more permits it to presume that defendant was under the influence of intoxicating liquor.[1] The specific rea-

---

[1] The instruction reads:

"In any criminal prosecution of driving a vehicle while under the influence of or affected by the use of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substances shall give rise to the following presumptions:

"If there was at the time of the offense 0.05 percent or less by weight of alcohol in the defendant's blood, it should be presumed that the defendant was not under the influence of intoxicating liquor.

"If there was at that time in excess of 0.05 percent but less than 0.10 percent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant.

son for the exception was "[t]here is not sufficient evidence in this record to connect a reading 56 minutes later to the time he was driving."

The jury convicted defendant, and this appeal followed.

Defendant's sole contention on appeal is that the trial court erred by instructing the jury in substantially the language of the appropriate statute, RCW 46.61.506, as it existed in 1976. Defendant does not contend that the presumption stated in the instruction is an improper statement of the law. Rather, he contends there was insufficient evidence in the record to warrant such an instruction, because the prosecution presented no expert witness qualified to tell the jury what the Breathalyzer recording meant in terms of the defendant's blood alcohol content or his sobriety or lack thereof approximately an hour before the test was taken. We view that assertion as really a contention that the test was too remote from the critical time (of his driving on the freeway) to assist the jury in its function of resolving the basic issue in the case.

We note initially that no objection was made when the test results were introduced into evidence. Accordingly, we accept the reading as accurate and reliable.[2] Hence, evidence of defendant's blood alcohol content was validly before the jury to demonstrate what that recording was *when the test was taken.* The instruction merely told the

---

"If there was at that time 0.10 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

"This presumption is not binding upon the jury even though the evidence of the test is unrefuted by the defendant. It is for the jury to determine what weight will be accorded the presumption, keeping in mind that the state at all times must sustain the burden of proving the defendant's guilt beyond a reasonable doubt."

[2]There is no indication in the record of any percentage of error or tolerance inherent in the testing process. *See State v. Bjornsen,* 201 Neb. 709, 271 N.W.2d 839 (1978).

jury that if it found defendant's blood alcohol content was 0.10 percent or more *when he was driving the pickup* then it could presume he was under the influence of intoxicating liquor at that time. The question then resolves into whether or not a reading taken an hour after the defendant stopped driving may be considered as circumstantial evidence of what his blood alcohol content was when he last drove.

In general, it has been observed in other jurisdictions that the lapse of time favors a defendant who takes a Breathalyzer test after termination of his driving because of the body's ability to "burn off" alcohol. *People v. Schrieber,* 45 Cal. App. 3d 917, 119 Cal. Rptr. 812 (1975); *People v. Kozar,* 54 Mich. App. 503, 221 N.W.2d 170 (1974); *Toms v. State,* 95 Okla. Crim. 60, 239 P.2d 812 (1952). We recognize a theoretical possibility that a person whose subsequent blood alcohol level meets the statutory minimum to trigger the presumption may have had a lower reading when he last drove. *See People v. Schrieber, supra.* Further, when the evidence indicates substantial consumption of alcohol after termination of driving and prior to administration of the test, the presumption from the basic fact to the presumed fact may lack a rational foundation. *State v. Dacey,* 138 Vt. 491, 418 A.2d 856 (1980).

We are persuaded, however, that a Breathalyzer test administered an hour after the accused stopped driving may be considered as circumstantial evidence that his blood alcohol content was at that level (or higher) while he was driving. Whatever theoretical inaccuracies may impact this rule in any given case can best be resolved by appropriate cross–examination of prosecution witnesses or presentation of defense testimony and by appropriate argument to the finder of fact.

We find substantial evidence to support the challenged instruction.

Judgment affirmed.

REED, C.J., and PEARSON, J., concur.

Reconsideration denied June 16, 1981.

Review denied by Supreme Court September 25, 1981.