[No. 61808-9.   En Banc.   February 16, 1995.]

THE DEPARTMENT OF LICENSING, *Petitioner*, v. RALPH W. LAX, *Respondent*.

*Christine O. Gregoire, Attorney General,* and *John S. Barnes, Assistant,* for petitioner.

*D. Geral Barnhart,* for respondent.

JOHNSON, J. — This case requires us to decide whether a person suspected of driving while intoxicated who initially refuses a breath or blood test can later withdraw or negate the refusal, thereby avoiding administrative revocation of the driving privilege. Ralph Lax's driver's license was revoked by the Department of Licensing (Department) for refusing to submit to a blood test following his arrest for driving while under the influence of intoxicants (DWI), despite the fact that Lax consented to a blood test approximately 12 minutes after his initial refusal. He appealed and the Department's action was sustained by the Superior Court. The Court of Appeals reversed. *Department of Licensing v. Lax,* 74 Wn. App. 7, 871 P.2d 1098 (1994). We hold the initial refusal is final, reversing the Court of Appeals and affirming the trial court.

Shortly before midnight on December 31, 1990, Trooper Kenneth Przygocki responded to a reported 1-car accident on Highway 101. Near Dosewallips State Park he saw what appeared to be a log blocking the northbound lane. As he got closer, he realized the object was a person and stopped. Ralph Lax jumped to his feet, asking the trooper why it had taken him so long to respond to the accident report.

Trooper Przygocki detected a strong alcohol odor on Lax's breath and poor balance. He placed Lax in the patrol car and drove to the accident scene, where he found Lax's car blocking the northbound lane. After determining Lax had been driving the car, Trooper Przygocki asked Lax to perform a field sobriety test. Lax performed poorly and the trooper arrested him for DWI.

When Lax was handcuffed and placed in the patrol car, he became verbally abusive and opened the car door. Trooper Przygocki replaced the handcuffs so Lax could not reach the door handle, put him in the car again, and read him his constitutional rights.

As Trooper Przygocki began driving to the Jefferson County Sheriff's office, Lax continued his verbal abuse and again succeeded in opening the car door with his foot. The trooper put leg restraints on Lax. Lax then began complaining of chest pains. The trooper took Lax to Jefferson General Hospital.

At the hospital emergency room, Trooper Przygocki advised Lax of his implied consent rights and requested a blood sample. Lax, who was being administered an EKG, refused to allow the blood sample.

Later, Lax offered to have a blood sample drawn by hospital staff. Prior to that sample being taken, Lax asked the trooper if he still wanted blood. The trooper advised him that he had already refused the test, but "if he was to demand to be offered", the trooper would have to take the blood as evidence. Report of Proceedings, at 20. The blood sample was taken by medical personnel approximately 12 minutes after the initial refusal. It was analyzed by the State and used as evidence in Lax's trial for DWI.

Trooper Przygocki completed and signed a report of Lax's refusal to submit to a blood test and sent the report to the Department. The Department revoked Lax's driver's license. Lax appealed the revocation.[1] Following a bench trial in Jefferson County Superior Court, Judge Hanley sustained the Department's decision to revoke Lax's driver's license. Lax appealed to the Court of Appeals, Division Two, which reversed. Division Two, in a divided decision, held subsequent consent can negate or make ineffective an earlier refusal. *Lax*, 74 Wn. App. at 18-19. This holding conflicts with earlier decisions from Division One holding an initial refusal is final. *Mairs v. Department of Licensing*, 70 Wn. App. 541, 854 P.2d 665 (1993); *Wolf v. Department of Motor Vehicles*, 27 Wn. App. 214, 616 P.2d 688 (1980); *Currier v. Department of Motor Vehicles*, 20 Wn. App. 16, 578 P.2d 1325 (1978). We took review to resolve the conflict.

Washington's implied consent statute, RCW 46.20.308, provides that when a law enforcement officer has reasonable grounds to believe a person has been driving while under the influence of intoxicating liquor, a breath test or, under some conditions, a blood test shall be administered for the purpose of determining alcohol content. The officer must warn the driver his or her refusal to take the test will result in revocation of the driving privilege and may be used in a criminal trial. RCW 46.20.308(2).

RCW 46.20.308(5) provides:

> If, following his or her arrest and receipt of warnings under subsection (2) of this section, *the person arrested refuses upon the request of a law enforcement officer to submit to a test or tests of his or her breath or blood, no test shall be given* except as authorized under subsection (3) or (4) of this section.

(Italics ours.) Upon receipt of a sworn report the person "refused to submit to the test or tests", the Department must revoke the person's driver's license. RCW 46.20.308(6).

---

[1]Although the record does not reflect the administrative appeal, we can assume, as did the Court of Appeals, that a hearing was held pursuant to RCW 46.20.308(7) and the revocation was sustained, because Lax then requested a trial de novo pursuant to RCW 46.20.308(8). The statute provides that only after an administrative hearing can the Department order be reviewed in superior court.

■ In this case, the trial court explicitly found Lax refused to take a blood test and Lax did not assign error to the finding. Therefore, it is a verity on appeal that Lax refused the blood test. *Metropolitan Park Dist. v. Griffith*, 106 Wn.2d 425, 433, 723 P.2d 1093 (1986). However, the court also found Lax later "volunteered to give blood" and did so approximately 12 minutes after the initial refusal. This finding is also uncontested. Lax argues his consent should operate to negate the earlier refusal for the purposes of RCW 46.20.308.

Lax's argument is inconsistent with the language of the implied consent statute, prior decisions of the Court of Appeals and courts in other states, and the public policy underlying the statute.

■■ The language of the statute does not support Lax's argument. When interpreting a statute, the court must give effect to the plain meaning of the statutory language. *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). The language at issue here says if a driver "refuses" an officer's request to submit to a test, "no test shall be given". RCW 46.20.308(5). The statute does not give the driver some amount of time to decide whether to refuse. Nor does it define refusal. We therefore must give "refuse" its ordinary meaning: "to show or express a positive unwillingness to do or comply with (as something asked, demanded, expected) . . .". *Webster's Third New International Dictionary* 1910 (1986). Once a driver has expressed positive unwillingness to comply with the officer's request for a breath or blood test, the driver has "refused" and the statute does not require an officer to administer a test.

This reading of the statute is consistent with prior Court of Appeals decisions. Division One has decided at least three cases dealing with whether a driver may reconsider his or her refusal to submit to breath or blood testing. In *Currier*, the court decided a case factually similar to this one. Currier refused to submit to a breath test and later asked to take it. By the time he asked, the arresting officer had been gone for 10 to 15 minutes and the sheriff refused to administer the

test. *Currier,* 20 Wn. App. at 17-18. The court held the plain language of the statute did not require the sheriff to give a test once there had been a refusal. *Currier,* 20 Wn. App. at 18. The court found that, even if the sheriff had administered a test when Currier asked, it would not have altered the effect of the earlier refusal. *Currier,* 20 Wn. App. at 18-19.

In *Wolf* and *Mairs,* the court reaffirmed *Currier* and its plain language analysis. *Wolf,* 27 Wn. App. at 219; *Mairs,* 70 Wn. App. at 550. The above three cases establish a bright line rule that cannot be reconciled with Lax's argument for a more flexible approach.

Cases from other states do not, on the balance, support Lax's argument either. Lax argues other states either allow a subsequent consent to cure a prior refusal or do not consider a refusal followed by subsequent consent to be a "legal" refusal. Approximately 13 states adopt this so-called "flexible" approach.[2] On the other hand, at least 19 states have adopted a bright line rule similar to Division One's decision in *Currier.*[3] Both these approaches tend to be premised on policy

---

[2]*See Pruitt v. Department of Pub. Safety,* 825 P.2d 887 (Alaska 1992); *Gaunt v. Motor Vehicle Div.,* 136 Ariz. 424, 666 P.2d 524 (Ct. App. 1983); *Zahtila v. Motor Vehicle Div.,* 39 Colo. App. 8, 560 P.2d 847 (1977); *Larmer v. Department of Hwy. Safety & Motor Vehicles,* 522 So. 2d 941 (Fla. Dist. Ct. App.), *review denied,* 531 So. 2d 1352 (Fla. 1988); *Department of Pub. Safety v. Seay,* 206 Ga. App. 71, 424 S.E.2d 301 (1992); *State v. Moore,* 62 Haw. 301, 614 P.2d 931 (1980); *In re Smith,* 115 Idaho 808, 770 P.2d 817 (Ct. App. 1989); *Standish v. Department of Rev.,* 235 Kan. 900, 683 P.2d 1276 (1984); *Pickard v. Department of Pub. Safety,* 572 So. 2d 1098 (La. Ct. App. 1990), *writ not considered,* 576 So. 2d 22 (La. 1991); *In re Suazo,* 117 N.M. 784, 877 P.2d 1088 (1994); *Lund v. Hjelle,* 224 N.W.2d 552 (N.D. 1974); *Bowman v. McCullion,* 21 Ohio App. 3d 138, 486 N.E.2d 1225 (1985); *Baldwin v. State ex rel. Department of Pub. Safety,* 849 P.2d 400 (Okla. 1993).

[3]*See Webb v. Miller,* 187 Cal. App. 3d 619, 232 Cal. Rptr. 50 (1986); *People v. Shorkey,* 23 Ill. App. 3d 662, 321 N.E.2d 46 (1974); *Krueger v. Fulton,* 169 N.W.2d 875 (Iowa 1969); *Cummins v. Lentz,* 813 S.W.2d 822 (Ky. Ct. App. 1991); *State v. Landry,* 428 A.2d 1204 (Me. 1981); *Mossak v. Commissioner of Pub. Safety,* 435 N.W.2d 578 (Minn. Ct. App. 1989); *Dudenhoeffer v. Director of Rev.,* 780 S.W.2d 701, 703 (Mo. Ct. App. 1989); *Johnson v. Division of Motor Vehicles,* 219 Mont. 310, 711 P.2d 815 (1985); *Wisch v. Jensen,* 221 Neb. 609, 379 N.W.2d 755 (1986); *Schroeder v. Department of Motor Vehicles & Pub. Safety,* 105 Nev. 179, 772 P.2d 1278 (1989); *Harlan v. State,* 113 N.H. 194, 308 A.2d 856 (1973); *State v. Corrado,* 184 N.J. Super. 561, 446 A.2d 1229 (1982); *Nicol v. Grant,* 117 A.D.2d 940, 499

grounds, which may differ from state to state because the legislative purpose behind the various statutes is different. Rather than adopting wholesale the rationale from another jurisdiction, we turn to the policy goals behind the Washington statute.

■ Lax argues policy considerations support a flexible rule. We find this argument unpersuasive. In *Nowell v. Department of Motor Vehicles,* 83 Wn.2d 121, 516 P.2d 205 (1973), we outlined three objectives of the implied consent statute:

> (1) to discourage individuals from driving an automobile while under the influence of intoxicants, (2) to remove the driving privileges from those individuals disposed to driving while inebriated, and (3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication.

*Nowell,* 83 Wn.2d at 124. The first two of these goals, deterrence and public safety, are best served when license revocation unavoidably follows refusal to take a test. A bright line rule provides this certainty.

■ The goal of evidentiary reliability is harder to assess. Lax argues the flexible rule is a better way to achieve this goal because it would result in more drivers being tested. However, the quality as well as the quantity of evidence must be considered. Delay in testing generally favors the DWI suspect by giving time for the body to "burn off" alcohol. *State v. Bence,* 29 Wn. App. 223, 227, 627 P.2d 1343, *review denied,* 96 Wn.2d 1002 (1981).

Courts adopting the flexible rule have tried to deal with this problem by allowing a refusal to be withdrawn only when the evidence is still reliable, but reliability may be hard for an officer to assess. It will vary depending upon how long ago the driver stopped drinking. If absolute reliability is difficult to assess, however, relative reliability is not. Following the reasoning of *Bence,* the sooner the test is

---

N.Y.S.2d 247 (1986); *Mathis v. Division of Motor Vehicles,* 71 N.C. App. 413, 322 S.E.2d 436 (1984); *In re Bergstrom,* 104 Or. App. 141, 799 P.2d 673 (1990); *Department of Transp. v. Stay,* 114 Pa. Commw. 532, 539 A.2d 57 (1988); *Leviner v. Department of Hwys. & Pub. Transp.,* 438 S.E.2d 246, 28 A.L.R.5th 840 (S.C. 1993); *Peterson v. State,* 261 N.W.2d 405 (S.D. 1977); *Conrad v. Schwendiman,* 680 P.2d 736 (Utah 1984).

given, the more reliable it normally is. It would seem, therefore, the goal of evidentiary reliability is better fostered by a bright line rule discouraging delay in testing.

We therefore find the legislative purpose of the implied consent law is best promoted by a bright line rule. We also think a bright line rule has great practical importance because it is more efficient with regard to law enforcement resources. *Lax,* 74 Wn. App. at 21-22 (Seinfeld, A.C.J., dissenting). *See, e.g., Krueger v. Fulton,* 169 N.W.2d 875, 879 (Iowa 1969); *People v. Shorkey,* 23 Ill. App. 3d 662, 664, 321 N.E.2d 46 (1974). If a refusal can be withdrawn or negated, the drunk driver has a tool which could be used to manipulate the officer and gain extra time. The circumstances of the refusal and consent might have to be weighed in many cases. This individualized consideration may take time more profitably spent dealing with other, perhaps more urgent tasks.

Having examined the words of the statute and the policy behind it, we find the bright line rule to be most consistent with them. We therefore hold Ralph Lax's subsequent consent does not in any way change the legal fact or consequences of his initial refusal.

We reverse the Court of Appeals and affirm the trial court.

DURHAM, C.J., and UTTER, DOLLIVER, SMITH, GUY, MADSEN, and TALMADGE, JJ., concur.