Donald J. FARMER, Appellant (Petitioner),

v.

STATE of Wyoming, DEPARTMENT OF TRANSPORTATION, Appellee (Respondent).

No. 98–335.

Supreme Court of Wyoming.

Sept. 9, 1999.

Representing Appellant: R. Douglas Dumbrill of Lubnau, Hand & Bailey, LLC, Gillette, WY. Argument by Mr. Dumbrill.

Representing Appellee: Gay Woodhouse, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Clinton D. Beaver, Senior Assistant Attorney General. Argument by Mr. Beaver.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Donald J. Farmer appeals from an order of the district court affirming the decision of the Department of Transportation (Department) suspending his driver's license for refusing to submit to chemical testing pursuant to Wyo. Stat. Ann. §§ 31–6–102 and –107.

We affirm.

### ISSUES

Farmer states the issues for review as:

1.) Did the officer who stopped Mr. Farmer make the stop with reasonable suspicion under Wyoming Law?

2.) Does Mr. Farmer have the right to change his mind and revoke his initial refusal to submit to a test to determine the alcoholic or controlled substance content of his blood?

3.) Did Mr. Farmer "refuse" a chemical test to determine the alcoholic or controlled substance content of his blood as that term is used in the [sic] W.S. § 31–6–101 et seq.?

4.) Is there a way under the statute to afford a *real* opportunity for an accused to make an *informed* and well *advised* decision about alcohol testing and still not impede law enforcement in their duties? (Emphasis in original.)

The Department distills the matter down to a single issue:

> Did Appellant have a right to "cure" his refusal to take a chemical test when requested by a peace officer by expressing his willingness to take the test three and one-half hours later?

## FACTS

Farmer was arrested in Gillette, Wyoming, on February 18, 1998 for suspicion of driving while under the influence. Upon his arrival at the Campbell County Detention Center, Farmer was read an Implied Consent Advisement. Despite being advised of the consequences, Farmer refused to submit to a Breathalyzer test. Approximately three and one-half hours later, after contacting his attorney, Farmer requested that the test be administered. An officer, citing Farmer's earlier refusal, declined to administer the test.

Pursuant to Wyo. Stat. Ann. § 31–6–102, the Department informed Farmer by letter on February 27, 1998 that his license had been automatically suspended for six months due to his refusal to submit to chemical testing. Farmer protested the suspension and requested a hearing. A contested case hearing was held on May 26, and July 1, 1998. The hearing officer upheld the license suspension based on his determination that the arresting officer had reasonable suspicion to make an investigative stop, and Farmer had not rescinded his initial refusal to take a Breathalyzer test within a reasonable time. Farmer filed a petition for review in the district court challenging the decision of the hearing examiner. The district court affirmed the hearing officer's decision on October 30, 1998. The district court concurred with the hearing officer's determination that the arresting officer had reasonable suspicion to make the initial stop of Farmer. The district court, however, did not accept the hearing officer's "reasonable time" analysis. Instead, it concluded that once Farmer had refused to take the test in the first instance, he could not rescind that decision, and the

license suspension provisions of Wyo. Stat. Ann. § 31–6–107 applied. Farmer appeals that decision to this Court.

## STANDARD OF REVIEW

We review the Department's decision as if the matter had come directly to us without affording any special deference to the district court's determinations. *Nellis v. Wyoming Department of Transportation,* 932 P.2d 741, 743 (Wyo.1997). "Absent evidentiary dispute, the standard of review for contested case hearings is simply stated as whether an agency's conclusions are in accordance with the law." *Parodi v. Wyoming Department of Transportation,* 947 P.2d 1294, 1295 (Wyo.1997).

When interpreting statutes, the court looks at "the ordinary and obvious meaning of the words employed by the legislature according to the manner in which those words are arranged." *Parodi,* 947 P.2d at 1295. The interpretation of statutes is a question of law. *Russell v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 944 P.2d 1151, 1155 (Wyo. 1997).

## DISCUSSION

The main issue raised by Farmer concerns whether a person who has refused to submit to a chemical test to determine the presence of alcohol or controlled substances can, at a later time, attempt to rescind or cure their initial refusal. Farmer argues that his driver's license should not be suspended because his subsequent offer to submit to such a test cured his initial refusal approximately three and one-half hours earlier. The Department counters that once Farmer had refused to submit to a test, his license was automatically suspended under the statutory scheme and, therefore, any subsequent attempt to rescind that initial decision was futile.

State courts have split on this issue.[1] We begin our analysis with the language of

---

1. A majority of states have adopted a bright line rule which holds a defendant to the consequences of his initial refusal regardless of any subsequent attempt to give his consent. A minority of states have adopted the flexible rule which allows a defendant to rescind his initial

the relevant portion of our implied consent statute, Wyo. Stat. Ann. § 31–6–102(d) (LEXIS 1999), which provides:

(d) *If a person under arrest refuses upon the request of a peace officer to submit to a chemical test* designated by the agency employing the peace officer as provided in subsection (a) of this section, *none shall be given* except in cases where serious bodily injury or death has resulted. The peace officer shall submit his signed statement to the department. The statement submitted by the officer shall contain:

(i) His probable cause to believe the arrested person was driving or in actual physical control of a motor vehicle:

(A) On a public street or highway in this state;

(B) In violation of W.S. 31–5–233(b) or any other law prohibiting driving under the influence as defined by W.S. 31–5–233(a)(v); and

(ii) That the person refused to submit to a test upon the request of the peace officer.

(Emphasis added.) The plain language of the statute does not support Farmer's position. The statute unambiguously states that if a person refuses to take a test, none shall be given. It does not provide any options for those who refuse a test. As we have stated before, when "[f]aced with a legislative 'shall,' the courts must give effect to the legislative prescription and are without authority to carve out exceptions to the mandate." *Bellamy v. Bellamy*, 949 P.2d 875, 876–77 (Wyo. 1997) (citing *State By and Through Department of Family Services v. Jennings*, 818 P.2d 1149, 1150 (Wyo.1991)). In this instance, the effect of the word "shall" in the statute precludes any discretion on the part of an officer to give a test after the driver has made a refusal. Therefore, in accordance with the legislative mandate, we adopt a bright line rule that once a driver refuses to take a test, any subsequent attempt to rescind or cure that refusal is ineffective against the legal consequences of the initial

refusal for the purposes of Wyo. Stat. Ann. § 31–6–102(d).

Policy considerations behind the bright line rule were succinctly set forth by the court in *Department of Licensing v. Lax*, 125 Wash.2d 818, 888 P.2d 1190 (1995). Implied consent laws generally have three objectives: "(1) to discourage individuals from driving an automobile while under the influence of intoxicants[;] (2) to remove the driving privileges from those individuals disposed to driving while inebriated[;] and (3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication." *Id.*, at 1193 (citing *Nowell v. Department of Motor Vehicles*, 83 Wash.2d 121, 516 P.2d 205 (1973)).

The first two of these goals, deterrence and public safety, are best served when license revocation unavoidably follows refusal to take a test. A bright line rule provides this certainty.

The goal of evidentiary reliability is harder to assess. Lax argues the flexible rule is a better way to achieve this goal because it would result in more drivers being tested. However, the quality as well as the quantity of evidence must be considered. Delay in testing generally favors the DWI suspect by giving time for the body to "burn off" alcohol. *State v. Bence*, 29 Wash.App. 223, 227, 627 P.2d 1343, *review denied*, 96 Wash.2d 1002 (1981).

Courts adopting the flexible rule have tried to deal with this problem by allowing a refusal to be withdrawn only when the evidence is still reliable, but reliability may be hard for an officer to assess. It will vary depending upon how long ago the driver stopped drinking. If absolute reliability is difficult to assess, however, relative reliability is not. Following the reasoning of *Bence*, the sooner the test is given, the more reliable it normally is. It would seem, therefore, the goal of evidentiary reliability is better fostered by a bright line rule discouraging delay in testing.

refusal within a "reasonable time." For a comprehensive list of the states and case citations setting forth which rule applies, *see Department*

*of Licensing v. Lax*, 125 Wash.2d 818, 888 P.2d 1190, 1192–93 fns. 2 and 3 (1995).

We therefore find the legislative purpose of the implied consent law is best promoted by a bright line rule. We also think a bright line rule has great practical importance because it is more efficient with regard to law enforcement resources. If a refusal can be withdrawn or negated, the drunk driver has a tool which could be used to manipulate the officer and gain extra time. The circumstances of the refusal and consent might have to be weighed in many cases. This individualized consideration may take time more profitably spent dealing with other, perhaps more urgent tasks.

*Lax,* 888 P.2d at 1193 (citations omitted).

Considering the statutory language and the policy considerations behind it, we conclude that adoption of the bright line rule is the most consistent course to take. Since Farmer initially refused to take the test, his subsequent consent cannot change the legal fact or consequences of that initial refusal.

█ Farmer attempts to raise two additional issues. First, he argues that the police officer did not have reasonable suspicion to make the initial stop, and second, he claims that he should have been allowed to consult with an attorney prior to making the decision whether or not to consent to the test. Neither of these claims are supported by cogent argument or citation to proper authority.

We have stated on numerous occasions that this Court will not consider arguments which are not cogent or supported by legal authority. *State ex rel. Reece v. Wyoming State Board of Outfitters and Professional Guides,* 931 P.2d 958, 959 (Wyo.1997); *Hamburg v. Heilbrun,* 891 P.2d 85, 87 (Wyo.1995); *Kipp v. Brown,* 750 P.2d 1338, 1341 (Wyo.1988). Therefore, we refuse to consider Farmer's arguments, and summarily affirm the decision below. W.R.A.P. 1.03 & 7.01(f); *State ex rel. Reece,* 931 P.2d at 959.

## CONCLUSION

We adopt the bright line rule that once a driver has refused to submit to a chemical test, pursuant to Wyo. Stat. Ann. § 31–6–102(d), the driver may not rescind that decision with a subsequent consent, and, therefore, he is bound by the legal consequences of his initial refusal. Accordingly, the Department's decision upholding the suspension of Farmer's driver's license is hereby affirmed.