FILED
8/1/2022
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 82149-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| AARON MICHAEL LANCASTER, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, J. — Aaron Lancaster appeals his conviction for attempting to elude, driving while under the influence (DUI), resisting arrest, and hit and run unattended. Lancaster argues that the trial court abused its discretion when denying his CrR 8.3(b) motion to dismiss for government misconduct, and violated CrR 3.3 time-for-trial rules. We affirm.

## FACTS

On January 7, 2020, the State charged Lancaster with attempting to elude a pursuing police vehicle, DUI, resisting arrest, and hit and run unattended. Following arraignment on January 17, 2020, the trial court set Lancaster's trial date for Monday, March 30, 2020. Lancaster remained out of custody following arraignment.

Citations and pin cites are based on the Westlaw online version of the cited material.

On March 12, 2020,[1] the State requested, and the trial court granted, a continuance resulting in a new trial date of April 6, 2020. The court granted the continuance over Lancaster's objection because the State was waiting for a blood test analysis from the crime lab.[2] On March 18, 2020, the court continued the trial from April 6, 2020, to May 18, 2020, because of the COVID-19 pandemic.

On March 20, 2020, the Washington Supreme Court issued an order stating, "the time between the date of this order and the date of the next scheduled trial date are EXCLUDED when calculating time for trial." Am. Order, No. 25700-B-607, In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency (Wash. Mar. 20, 2020). On April 13, 2020, the Washington Supreme Court issued a revised emergency order further suspending jury trials after May 4, 2020, and explained that the period between April 13, 2020, and July 3, 2020, "shall be excluded when calculating time for trial." Revised & Extended Order, No. 25700-B-615, In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency (Wash. Apr. 13, 2020). On April 29, the Washington Supreme Court issued a second revised order explaining that the time period between April 29, 2020, and September 1, 2020, "shall be excluded when calculating time for trial." Second Revised & Extended Order, No. 25700-B-618, In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency (Wash. Apr. 29, 2020).

---

[1] The court rescheduled the status hearing twice to allow Lancaster to appear and respond to the State's motion to continue.

[2] Additionally, Whatcom County Superior Court administered an order suspending and rescheduling jury trials pending between March 11 and March 31, 2020, to April 6, 2020, because of the COVID-19 pandemic. Admin. Order No. 20-2-001-37, In re Response to Public Health Risk (Whatcom County Super. Ct., Wash. Mar. 11, 2020).

On April 30, 2020, the parties continued trial from May 18, 2020, to July 20, 2020, based on the COVID-19 pandemic and the Washington Supreme Court emergency order. On July 8, 2020, the trial court continued Lancaster's trial from July 20, 2020, to August 17, 2020, again based on the pandemic. On July 20, 2020, Lancaster filed a written objection to the new trial date based on a speedy trial violation. On July 22, 2020, the trial court continued Lancaster's trial from July 20, 2020, to August 31, 2020, again based on the pandemic, as well as trial priority issues. On August 12, 2020, the court continued the trial date from August 31, 2020, to September 28, 2020, again based on the pandemic.

On September 10, 2020, Lancaster waived his right to a jury trial and elected for a bench trial. On September 21, 2020, the State filed its witness list. On September 24, 2020, Lancaster moved to dismiss the charges against him under CrR 8.3(b) predicated on the State's mismanagement in the late disclosure of a toxicology report showing that Lancaster's blood results revealed a blood alcohol level in excess of the legal limit and the State's failure to serve the defense with a list of trial witnesses. On September 25, 2020, the State disclosed an expert witness to testify on Lancaster's blood alcohol analysis.

On the day of trial, September 28, 2020, the State responded to Lancaster's motion to dismiss and orally moved to dismiss the malicious mischief charge and to amend the DUI charge to include the alternative charge under the "per se" prong of the DUI statute.[3]

---

[3] The State charged Lancaster with DUI under RCW 46.61.502(1)(c) (making it a crime to drive "under the influence of or affected by intoxicating liquor, cannabis, or any drug"). While the proposed amended complaint is not in the record, it appears the State sought to add the alternative charge of driving under the influence under RCW 46.61.502(a) ("within two hours after driving, an alcohol

-3-

Lancaster argued that the late disclosure of the State's expert to testify about the blood alcohol testing and the late disclosure of any trial witnesses warranted dismissal under CrR 8.3(b). The court determined that there was mismanagement in the State's failure to disclose the blood evidence less than a week before trial and in adding witnesses at that late date. But it concluded dismissal was not the appropriate remedy but suppression of the blood test results was the more appropriate route to ameliorate any prejudice to Lancaster. With regard to the late disclosure of the lay trial witnesses, the trial court determined that it technically complied with the local rules of the court but did not comply with the "spirit of the court rule." The court declined to exclude lay witnesses listed in the police reports because their identity came as no surprise to Lancaster. But it excluded the toxicologist who performed the blood analysis and evidence of Lancaster's blood alcohol level. The exclusion of the blood test report and toxicologist effectively precluded the State from amending the information to add the alternative DUI charge.

Following the bench trial, the court found Lancaster guilty of eluding a pursuing police vehicle, DUI, resisting arrest, and hit and run unattended.

Lancaster appeals.

---

concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506").

ANALYSIS

A. Motion to Dismiss

Lancaster argues that the trial court erred by denying his CrR 8.3(b)[4] motion to dismiss for the State's mismanagement. We disagree.

We review a trial court's decision pursuant to a CrR 8.3(b) motion to dismiss for abuse of discretion. State v. Salgado-Mendoza, 189 Wn.2d 420, 427, 403 P.3d 45 (2017). A trial court abuses its discretion when the decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is manifestly unreasonable if, despite applying the correct legal standard to the supported facts, a court adopts a view "that no reasonable person would take." State v. Lewis, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990).

A trial court may dismiss criminal charges "due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." CrR 8.3(b). The prosecution need not act in bad faith to commit misconduct— "simple mismanagement is sufficient." State v. Dailey, 93 Wn.2d 454, 457, 610 P.2d 357 (1980). To dismiss criminal charges, the governmental misconduct must cause actual prejudice. State v. Martinez, 121 Wn. App. 21, 29-30, 86 P.3d 1210 (2004). Dismissal is an extraordinary remedy that trial courts should only resort to in "egregious cases of mismanagement or misconduct." State v. Wilson, 149 Wn.2d 1, 10, 65 P.3d 657 (2003).

---

[4] In addition to CrR 8.3(b), the State briefs standards for dismissal under CrR 4.7(h)(7)(i). Lancaster did not raise this argument at trial or on appeal.

The trial court did not abuse its discretion by denying Lancaster's CrR 8.3(b) motion to dismiss. Lancaster asserts that the State's September 21, 2020 disclosure of a trial witness list, and the September 23, 2020, disclosure of the blood test lab report, were misconduct and resulted in prejudice. But even if the State's late disclosure of witnesses and the lab report was government misconduct, the trial court had the discretion to fashion the appropriate remedy and chose exclusion of the blood test results and the toxicologist's testimony as the most appropriate way of eliminating prejudice.

The trial court's finding that the late lay witness disclosure did not actually prejudice Lancaster is supported by the record. The State identified the following witnesses in its disclosure: a representative of BNSF Railroad, Deputies Streubel, York, Vanderveen, and Slyter, Sgt. Crisp, Aurora Berberich, Simona Nicolau, Chad Dwyer, and Washington State Patrol Officer Dawn Sklerov. On the day of trial, the State indicated no intention to call any witness from BNSF. And the trial court excluded any testimony from Sklerov.

As for the disclosure of police officer witnesses, defense counsel was aware the State intended to call Deputy Slyter because he was scheduled to be on military leave and the State wanted to continue trial because of his unavailability. When Lancaster stipulated that Styler could testify telephonically, the State withdrew a motion to continue trial. The police reports also identified the responding officers as including Streubel, York, Crisp, Vanderveen, and Slyter. Only Slyter, Streubel, and Vanderveen testified at Lancaster's trial. The identities of these three officers were not a surprise to Lancaster or his attorney.

The State's disclosure also identified Berberich, the nurse who drew Lancaster's blood at the hospital, and Dwyer, as other fact witnesses. The State, however, did not call either of these two witnesses to testify at trial. Thus, the untimely disclosure of their identities could not have prejudiced Lancaster at trial.

Finally, the final lay witness identified by the State, Nicolau, was called to testify at trial but she indicated she had been in a relationship with Lancaster for over seven years. Lancaster's attorney acknowledged that one of the listed witnesses was his client's girlfriend. The trial court had a tenable basis for determining that neither her identity as a trial witness nor her personal observations of Lancaster on the night in question could have prejudiced Lancaster because of his relationship with her.

Lancaster asserts that this case is analogous to Dailey. Lancaster's assertion is incorrect. In Dailey, the court affirmed dismissal of Dailey's case due to numerous discovery violations throughout the life of the case, as well as violations of court rules and orders. Dailey, 93 Wn.2d at 459. Unlike Dailey, here the State did not violate any court rules, yet the trial court still suppressed the blood test evidence and denied the State's motion to amend its information for trial fairness.

Lancaster also relies on Salgado-Mendoza, for the premise that the trial court should have granted his CrR 8.3(b) motion to dismiss. The case is inapposite. In Salgado-Mendoza, the court concluded that the trial court properly denied Salgado-Mendoza's CrR 8.3(b) motion to dismiss based on the State's late disclosure of a toxicologist witness. Salgado-Mendoza, 189 Wn.2d at 439. The court also noted that the witness's testimony need not have been suppressed. Salgado-Mendoza, 189 Wn.2d at 439. Like Salgado-Mendoza, the State's mismanagement of Lancaster's case

did not result in prejudice warranting the extraordinary remedy of dismissal; the trial court did not abuse its discretion in ruling as such.

B. Time for Trial

Lancaster argues that the trial court erred in not dismissing his case for a violation of the CrR 3.3 time for trial rule. We disagree.

"Just as the construction of a statute is a matter of law requiring de novo review, so is the interpretation of a court rule." Nevers v. Fireside, Inc., 133 Wn.2d 804, 809, 947 P.2d 721 (1997). When interpreting a statute, we must give effect to the plain meaning of the statutory language. Dep't of Licensing v. Lax, 125 Wn.2d 818, 822, 888 P.2d 1190 (1995).

Lancaster was not detained before trial. Thus, under CrR 3.3(b)(2), his time for trial was 90 days after his arraignment, "or the time specified under [CrR 3.3(b)(5)]." CrR 3.3(b)(5) allows for an extension of time during "excluded" periods: "if any period of time is excluded pursuant to [CrR 3.5(e)], the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period." Excluded periods under CrR 3.3(e) include continuances granted by the court under CrR 3.3(f). CrR 3.3(e)(3). Under CrR 3.3(f)(2), "the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense."

The trial court did not violate CrR 3.3. Lancaster's arraignment was on January 17, 2020, making his original time for trial date April 16, 2020. The original trial was scheduled for March 30. The trial court continued his trial on March 12, and again on March 18, resulting in rescheduled trial dates of April 6 and May 18, as well as new time

for trial dates of May 6 and June 17, respectively, under CrR 3.3(b)(5).[5] Following these continuances, the Washington Supreme Court issued emergency orders excluding time periods for purposes of CrR 3.3 on March 20, April 13, and April 29 between the date of the order and the defendant's next trial date. The trial court then continued Lancaster's trial on April 30, July 8, July 22, and August 12, resulting in rescheduled trial dates of July 20, August 17, August 31, and September 28, as well as new time for trial dates of August 18, September 16, September 20, and October 28, respectively, under CrR 3.3(b)(5). While we respect that the delay in Lancaster's trial may have been frustrating, the extraordinary circumstances of COVID-19 required it. Taking into account the trial court's continuances as well as the Washington Supreme Court's emergency orders, we conclude that there was no violation of CrR 3.3.

Affirmed.

_____
Mann, J.

WE CONCUR:

_____            _____
Coburn, J.                                  Andrus, C.J.

---

[5] Under CrR 3.5(b)(5), "the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period."